IN THE MATTER OF THE ESTATE OF Nora WELLS,
An Incompetent, J. C. WELLS and Irene BAIN on Their
Own Behalf and On Behalf of Nora WELLS
*v.* Elvan G. SANFORD, Trustee, and
Elvan G. SANFORD as Guardian of the ESTATE OF
Nora WELLS, An Incompetent, and
Elvan G. SANFORD & Koleta SANFORD, His Wife

83-240                                              663 S.W.2d 174

Supreme Court of Arkansas
Opinion delivered January 23, 1984

*Roy Danuser* and *Griffin Smith, Jr.,* for appellant.

*Poynter, Huckaba & Gearhart, P.A.,* by: *Terry M. Poynter,* for appellee.

P. A. HOLLINGSWORTH, Justice. The central issue raised in this appeal is whether the assets of a testamentary trust should be used to support a woman who has been declared incompetent before her own assets, as controlled by her guardian, are used.

Nora Wells was declared physically incompetent in 1974 and Elvan G. Sanford, one of the appellees, was appointed her guardian. In 1977, Hiram Wells, Nora Wells' son, executed his Last Will and Testament. The Will contained the following provisions:

## II

If my mother, Nora Wells, is living at the time of my death, then I give, devise, and bequeath my entire estate to Elvan G. Sanford, as Trustee to be held in trust for the use and benefit of my mother as long as she lives. I authorize the Trustee to expend for the support and maintenance of the said Nora Wells, such sums as may be necessary as long as she lives.

## III

If my mother, Nora Wells, is not living at the time of my death, then I give, devise, and bequeath my estate to Elvan G. Sanford and/or Koleta J. Sanford, his wife, to have and to hold as their absolute property. If my mother, Nora Wells, survives me, any of my estate left at her death I hereby direct said Elvan G. Sanford and/or Koleta J. Sanford to receive any and all of balance of estate left as their absolute property.

Hiram Wells died in 1979 leaving only real property as the corpus of the testamentary trust. Nora Wells, now 91, resides in a nursing home and owes an unpaid bill there of $23,749.74. Her property consists solely of: (1) 109 acres of realty owned by her in fee and subject to the guardianship of Elvan Sanford; and (2) her life interest in the 80 acres of

realty constituting the testamentary trust of Hiram Wells. Sanford, as guardian, petitioned the Baxter County Probate Court for permission to sell the guardianship assets of Nora Wells and apply the proceeds to her support. Subsequently, J. C. Wells and Irene Bain, appellants here and Nora Wells' children, petitioned the Baxter County Chancery Court to direct the trustee to sell the trust assets and apply those proceeds for Nora Wells' support. The cases were consolidated for trial. The court delayed ruling on the petition to sell the guardianship assets until a new guardian was appointed and joined in the petition. The court dismissed the appellants' petition to sell the trust assets finding that Hiram Wells intended that his testamentary trust be used to support Nora Wells only in the event her own property was insufficient to maintain her. We reverse.

Although the appellants failed to include a jurisdictional statement as mandated by Ark. Sup. Ct. R. 29 (2), this case comes to us under Rule 29 (1) (p), since it presents a question about the construction of a will.

In his decree, the chancellor found that if Nora Wells had predeceased Hiram Wells, all of his estate would have gone to the Sanfords. Since Hiram predeceased Nora, his property went into trust for the "use and benefit" of Nora during her life, with the balance of the trust estate going to the Sanfords. The chancellor stated:

5. That Nora Wells has ample assets which may be used for her.

6. The central issue of the case is whether or not Hiram intended that the phrase "sums necessary for the support and maintenance" of Nora Wells means that his estate was to be appropriated to maintain Nora even when she had sufficient means or whether he intended to have his estate held available for her support in the event those means were exhausted.

7. In the literal sense, no funds would be "necessary" for Nora's support until her own ran out. In addition, if Hiram's funds are used to support Nora

before her funds run out, the effect is to increase Nora's estate and possibly benefit Hiram's brother and sister whom Hiram intended to pass in favor of the Sanfords. On the other hand, if Nora's funds were used first, she will still be taken care of, a result consistent with Hiram's purpose, but any funds remaining will ultimately benefit the Sanfords, who were the next objects of his bounty.

We have said before that unless something appears in the will indicating a different purpose, it is ordinarily presumed that the testator intended the beneficiary to be supported and maintained from estate income or from sale of part of the corpus. *Cross* v. *Pharr,* 215 Ark. 463, 221 S.W.2d 24 (1949).

The intention of the testator is derived from the four corners of the will, considering the language used and giving meaning to all of its provisions. *Armstrong* v. *Butler,* 262 Ark. 31, 553 S.W.2d 453 (1977). We construe the words and sentences used in a will in their ordinary sense in order to arrive at the testator's true intention. *Fowler* v. *Hogue, Trustee,* 276 Ark. 416, 635 S.W.2d 274 (1982). We have held that when there is nothing in the will to indicate that the testator did not understand the meaning of the words he used, we must presume that he did. *Lewis* v. *Bowlin,* 237 Ark. 947, 377 S.W.2d 608 (1964). Furthermore, in *Lewis* we quoted our holding in *Moody* v. *Walker,* 3 Ark. 147 (1840) where we stated:

> When technical phrases or terms of art are used, it is fair to presume that the testator understood their meaning, and that they expressed the intention of his will, according to their import and signification. When certain terms or words have by repeated adjudication received a precise, definite and legal construction, if the testator in making his will uses such terms or similar expressions, they shall be construed according to their legal effect.

Under *Cross, supra,* and its progeny we have given the term "necessary for support" a legal construction. We have held

that a trust written in those terms is to be used to support the beneficiary regardless of the beneficiary's own assets. We must presume that Hiram Wells intended that the words he used would be given their legal effect. To find, as the chancellor did, that Hiram intended that his mother use her own assets first, thereby decreasing her estate, expressly so that Hiram's brother and sister would not inherit their mother's estate, would be allowing the testator to control the disposition of someone else's property. It is axiomatic that a testator can only convey by will such property as he owns and that he cannot, through his will, control the estate of another. *Refeld et al Executors* v. *Bellette et al,* 14 Ark. 148 (1853); 94 C.J.S. Wills § 76 (1956).

The appellants rely on *Cross* v. *Pharr, supra,* which involves a devise of property by the testator to F. E. Pharr in the nature of a trust for the lifetime of the testator's wife. During her life, the trustee was to pay Mrs. Pharr the income from the estate "when and as the same may be needed by my said wife." In *Cross,* the parties claimed that the widow's private means were sufficient for her support. We held:

> It is true that the will directs payment of the net income "when and as the same may be needed;" and should we construe J. W. Pharr's plan as one reserving the income to actual necessities arising after Mrs. Pharr had exhausted her own funds, appellants would be correct. *This, however, is not sufficiently shown to have been the testator's desire.* It is pointed out that the income, when apportioned to the entire period affected, amounted to but $525 a year. *Unless something appears in the will indicating a different purpose,* it is ordinarily presumed that the *trustor intended the beneficiary* to be supported and maintained from estate income, or as is sometimes the case, from sale of a part of the corpus. (emphasis added)

That case mandates a similar result here. Our decision in *Cross* was based on what was sufficiently shown to have been the testator's desire based on what appeared in the will. Similarly, in *Martin* v. *Simmons First Nat'l Bank, Trustee,* 250 Ark. 774, 467 S.W.2d 165 (1971), we held that the

appellant was not required to exhaust all of her resources before her medical expenses could be paid for out of the corpus of a trust left by her sister. In both cases, as here, we found that the appellant was the primary object of the testator's bounty, with others given consideration incidentally.

Here the clause in Hiram Wells' will created a presumption that he intended that Nora Wells be supported by the trust assets during her lifetime. Under *Cross* that is sufficient. Absent language by the testator manifesting an intention that the trust assets be withheld until the guardianship assets were exhausted, the presumption is that the trust assets are available for use immediately. Our different conclusions do not result so much from a disagreement with the chancellor on the law involved as from its application to the facts in this case.

> The function of a court in dealing with a will is purely judicial; and its sole duty and its only power in the premises is to construe and enforce the will, not to make for the testator another will which might appear to the court more equitable or more in accordance with what the court might believe to have been the testator's unexpressed intentions. *Park* v. *Holloman*, 210 Ark. 288, 195 S.W.2d 546 (1946).

The appellants' second point on appeal concerns whether, when the trust assets consist wholly of real property, the trustee may sell the realty when the trust language itself does not expressly authorize the sale. The chancellor did not reach this point, having found that Nora's assets were to be depleted before the trust assets would need to be sold. However, under the terms of Hiram's will, his entire estate was to be held in trust for the use and benefit of his mother. Sanford, as the Trustee, was authorized to expend such sums as may be necessary for that purpose. We held in *Pickering* v. *Loomis, Trustee,* 199 Ark. 720, 135 S.W.2d 833 (1940), that:

> [T]he trustee must be deemed to possess or be able to

exercise such powers as are necessary for the purposes of the trust. There are no words expressly empowering a sale of any of the property, but such power will be implied when a sale may be necessary . . . or (sic) the trustee to comply with the other provisions of the will.

Therefore, we hold that Sanford, as Trustee, has the authority to sell the real estate property in order to pay the necessary sums to Nora Wells.

The appellants' final point on appeal is not properly before this court. The appellants argue that judicial supervision of the trust is not inappropriate because of the conflict of interest inherent in Sanford's position as trustee of the trust, remainderman of the trust, and guardian of the trust's beneficiary. A new guardian has been appointed for Nora Wells. The appellees counter by quoting our decision in *Thompson, Trustee* v. *Dunlap,* 244 Ark. 178, 424 S.W.2d 360 (1968), where we held that a court may not, on its own motion, supervise the administration of the trust, absent a direction by the creator of the trust that it be so supervised. Judicial supervision is not an issue here. Our decision today directs that the trust assets be used to support Nora Wells, irrespective of her own assets, and authorizes the sale of those assets, if necessary, to comply with our decision. We leave undisturbed the trustee's discretion as to the invasion of the trust assets. Absent an abuse of that discretion, we do not interfere. Restatement (Second) of Trusts § 187 (1959).

Reversed.