Thomas G. CARMODY and Dr. Norman C. Savers Jr.,
as Co-administrators of the Estate of Helen Virginia *v.*
George Philip BETTS as Executor of the Estate of
Linnie Betts, et al

CA 07-1286                                               289 S.W.3d 174

Court of Appeals of Arkansas
Opinion delivered November 19, 2008

[Rehearing denied January 7, 2009.]

*Wilkinson Carmody Gilliam*, by: *Arthur R. Carmody, Jr.*; *Marshall & See*, by: *Pat Marshall*; and *Katherine Savers McGovern*, for appellants.

*Harrell, Lindsey & Carr, P.A.*, by: *Paul E. Lindsey*, for appellee Michael P. Gaughan.

*Allen P. Roberts*, for appellee Estate of Joseph William Patrick Coan, Jr., Deceased.

*Dover Dixon Horne PLLC*, by: *Gary B. Rogers*, for appellee Metropolitan Opera Association, Inc.

*James M. Pratt, Jr.*, for appellee George P. Betts, Administrator of the Estate of Linnie Betts, Deceased.

*Eugene D. Bramblett*, for appellee BancorpSouth, Inc.

*Wright, Lindsey & Jennings LLP*, by: *Bettina E. Brownstein* and *James R. Van Dover*, for appellee Western Surety Company.

ROBERT J. GLADWIN, Judge. Thomas Carmody and Dr. Norman Savers, as co-administrators of the Estate of Helen Coan, deceased, and on behalf of her heirs, have appealed from a circuit court's order construing the 1984 will of Ms. Coan's brother, Joseph Coan, Jr. Because Ms. Coan was disabled and remained incompetent all of her life, Mr. Coan served as guardian of her person and estate and set up a testamentary trust for her support in his will. Ms. Coan also had substantial assets of her own. Mr. Coan's will directed that, upon his sister's death, the remainder of the trust, after certain specific bequests, was to be distributed equally to appellee Metropolitan Opera Association, Inc., and Georgetown University, his alma mater, to be used by them in his memory.

The will stated:

> (a) During the lifetime of my sister, Helen Virginia Coan, my Co-Trustees are authorized and directed to pay for the above beneficiary any part of the annual income from said trust necessary to provide for her care, welfare, and maintenance. I direct that such payment shall be made at least monthly. It is my intention herein to provide for the care, welfare, and maintenance of my incompetent sister for the remainder of her life, specifically from the income from said trust, if possible.

> (b) My Co-Trustees are directed that the principal of the trust may be encroached upon and may be invaded if necessary, to provide for the care, welfare, and maintenance of my sister, but my Co-Trustees are directed to provide for the needs only from the income of said trust, if possible. My Co-Trustees are directed that any undistributed income shall become a part of the principal of the trust.

After Mr. Coan's death in 1984, Linnie Betts (now deceased), an employee of the bank where the Coan siblings' funds

were held, was appointed successor guardian of Ms. Coan and her estate. Ms. Betts also served as a co-administrator of Mr. Coan's estate and as a co-trustee of his testamentary trust with John Gaughan. After Ms. Coan died in 2005, appellants alleged that the trustees had violated the terms of the trust by considering Ms. Coan's personal assets in determining the necessity of using the money in the trust for her support. Appellees, George Betts, Administrator of the Estate of Linnie Betts; Michael Gaughan, Administrator of the Estate of Joseph Coan; Bancorpsouth, Inc.; Western Surety Company; Metropolitan Opera; and the Estate of Joseph Coan, argued that the will gave the trustees discretion to consider Ms. Coan's personal assets in determining her need of support from the trust.

At the hearing on the will's construction, all parties agreed that the will was unambiguous. The circuit court construed the will as giving the trustees discretion in determining Ms. Coan's need of the trust's income and principal:

> The Court recognized that the cardinal rule in construing a will or trust instrument is that the intention of the settlor must be ascertained. In order to properly interpret a will or trust the intent of the testator or settlor must be determined and that intent should govern. This intention is to be determined by examination of the four corners of the instrument, considering the language used, giving meaning to all of its relevant provisions whenever possible.

> Upon examination of the entire instrument it appears clear that JWC had three primary objectives in mind at the time of the execution of his will and trust. First, he wanted to ensure that HVC, his severely mentally retarded sister with whom he was obviously very close, would continue to receive the very best care and support that could be provided. JWC had obviously committed himself to this effort through his adult life and fully accepted this responsibility following the death of his parents. The substantial assets within JWC's mother's estate were never severed but remained commingled as a source of revenue and assets which were used for the care of HVC during her lifetime.

> Secondly, the language contained in the will and trust clearly indicates that JWC had a strong desire to preserve the family home and contents as well as at least $125,000 to be distributed to specific deserving individuals upon the death of HVC.

Finally, there are two nonprofit institutions, the Metropolitan Opera of New York and his alma mater, Georgetown University, which the testator strongly desired to give the remainder of his estate equally in his remembrance.

The Court is well aware of the line of Arkansas cases concerning the construction of will and trust language dealing with the distribution of income and principal that have held that, unless something appears in the will indicating a different purpose, it is ordinarily presumed that the testator intended the beneficiary to be supported and maintained from estate income or from the sale of part of the corpus. *Cross v. Farr* [sic], 215 Ark. 463, 221 S.W.2d 24 (1949); *Bailey v. Sanford Trustee* [sic], 281 Ark. 242, 663 S.W.2d 174 (1984). Arguably, the rulings in these cases indicate that in a circumstance similar to the situation before us, the co-trustees had no discretion and could not consider the assets of the incompetent HVC in determining whether income or principal assets of the trust were to be expended for her care.

However, the Court is of the opinion that these cases can be distinguished from that of the present case. Those cases basically dealt with whether or not the trustee had the right to liquidate certain assets for the purpose of providing funds of the support of the beneficiary, though the beneficiary had individual assets which could be used for said purpose. In both cases the settlor specifically pledged all income and principal in the trust for the support of the beneficiary.

The language as contained in the testamentary trust within the will of JWC contains language of limitation, which would strongly indicate his desire to preserve the principal assets of his estate for distribution as per the terms of the will and trust, which were not absolutely necessary for the purpose of the continuing care of his sister. The will and trust clearly instruct the co-trustees to use only that part of the income "necessary" for his sister's care. In addition he expected there to be income in excess of that necessary to sustain her, as the undistributed income was to become a part of the principal. This language demonstrates a clear intention by JWC for the preservation and distribution of the assets remaining following his sister's death. It is only reasonable that the settlor's intention was that the substantial assets in his sister's name were to be taken into consideration and used for her support when possible.

Restatement (Third) Trust, Section 50, Comment e, contains language that supports the position that the assets of the trust

beneficiary (HVC) are to be considered by a trustee in determining what expenses were to be paid from trust assets.

When considering all of the language contained in the trust and will, the Court is convinced that this language indicates the intention of JWC was that his sister's assets must be taken into consideration in order to make the stated gifts to individuals and institutions that he cared for so deeply. The co-trustees, therefore, did not violate this intention or the terms of the document by considering the assets of HVC or her guardianship as a source of payment for her care.

On appeal, appellants argue that the circuit court failed to follow precedent and misconstrued the will. We review probate cases de novo and affirm the circuit court's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. *Taylor v. Woods*, 102 Ark. App. 92, 282 S.W.3d 285 (2008). In the interpretation of wills, the paramount principle is that the intent of the testator governs. *Id.* The testator's intent is to be gathered from the four corners of the instrument itself. *Id.* In construing a trust, we apply the same rules applicable to the construction of wills. *Bailey v. Delta Trust & Bank*, 359 Ark. 424, 198 S.W.3d 506 (2004). This intention is to be determined from viewing the four corners of the instrument, considering the language used, and giving meaning to all of its provisions, whenever possible. *Id.* We will construe the words and sentences used in a will or trust in their ordinary sense in order to arrive at the testator's true intention. *Id.* In order to determine the intentions of the testator, consideration must be given to every part of the will. *Id.* When the purpose of a trust is ascertained, that purpose will take precedence over all other canons of construction. *Wisener v. Burns*, 345 Ark. 84, 44 S.W.3d 289 (2001).

Extrinsic evidence may be received on the issue of the testator's intent only if the terms of the will are ambiguous. *Taylor v. Woods, supra.* The determination of whether there is an ambiguity is a matter of law. *Thinn v. Parks*, 79 Ark. App. 20, 83 S.W.3d 430 (2002). Absent a finding of ambiguity by the court, testimony about the settlor's intent should not be considered. *Id.* When the terms of a trust are unambiguous, it is the court's duty to construe the written agreement according to the plain meaning of the language employed. *Bailey v. Delta Trust & Bank, supra.* Here, all parties agreed at the hearing and on appeal that the will was unambiguous, and we concur.

Prior Arkansas cases construing trust language about the distribution of income and principal for the support of a beneficiary have held that phrases such as "necessary for support" were presumed to mean that the trustee was to use the money for that purpose regardless of the beneficiary's ability to pay unless the trust contained language indicating a contrary intent. *Cross v. Pharr*, 215 Ark. 463, 221 S.W.2d 24 (1949) (relying on the *Restatement of Trusts* § 128, comment e (1935)). *See also Bailey v. Delta Trust & Bank, supra; Estate of Wells v. Sanford*, 281 Ark. 242, 663 S.W.2d 174 (1984); *Martin v. Simmons First Nat'l Bank*, 250 Ark. 774, 467 S.W.2d 165 (1971).

The *Restatement (Second) of Trusts* section 128 (1959) was also in line with Arkansas cases. This presumption changed, however, in the *Restatement (Third) of Trusts*, section 50 (2003), as explained in comment e:

> *e. Significance of beneficiary's other resources.* It is important to ascertain whether a trustee, in determining the distributions to be made to a beneficiary under an objective standard (such as a support standard), (i) is *required* to take account of the beneficiary's other resources, (ii) is *prohibited* from doing so, or (iii) is to consider the other resources but *has some discretion* in the matter. If the trust provisions do not address the question, the general rule of construction presumes the last of these.

> Specifically, with several qualifications (below), the presumption is that the trustee is to take the beneficiary's other resources into account in determining whether and in what amounts distributions are to be made, except insofar as, in the trustee's discretionary judgment, the settlor's intended treatment of the beneficiary or the purposes of the trust will in some respect be better accomplished by not doing so.

Noting that the cases are in conflict on this issue, the Reporter's notes about comment e stated that the *Restatement (Third) of Trusts* reflects a recent trend that is more realistic as a reflection of probable settlor objectives. In *Bailey v. Delta Trust & Bank, supra*, which was decided after the adoption of the *Restatement (Third) of Trusts*, the court did not address whether section 50 should be adopted on this issue. The supreme court and this court have relied upon some sections of the *Restatement (Third) of Trusts*, but have not yet expressly adopted section 50. *See Alexander v. McEwan*, 367 Ark. 241, 239 S.W.3d 519 (2006); *Taylor v. Woods, supra; Trott v. Jones*, 85 Ark. App. 526, 157 S.W.3d 592 (2004).

■ We need not decide, however, whether the circuit court erred in relying on section 50 of the *Restatement (Third) of Trusts*. Instead, this case can, in line with Arkansas precedent, be affirmed as a situation in which "something appear[ed] in the will indicating a different purpose" than an intention that the beneficiary would be supported from the estate income and principal without regard to Ms. Coan's personal resources. *See Cross v. Pharr*, 215 Ark. at 467, 221 S.W.2d at 26. In Article Six, section (C)(a), the will stated that the co-trustees were authorized to pay for Ms. Coan "any part of the annual income from said trust necessary to provide for her care, welfare and maintenance." This section treated the current income differently from principal. Section (C)(b)'s provision that the principal "may be encroached upon if necessary" was not mandatory and implied some discretion by the co-trustees. Section (C)(b) added, "but my Co-Trustees are directed to provide for the needs from the income of said trust, if possible," emphasizing the settlor's intent to protect the principal. Section (C)(b) concluded with "My Co-Trustees are directed that any undistributed income shall become part of the principal of the trust." This language indicated that Mr. Coan believed that current income would be more than sufficient to meet Ms. Coan's needs and also reflected an intent to protect the principal. Further, the next subsection provided for the distribution of the principal and all undistributed income upon the termination of the trust, without adding the qualification "if any remains." For these reasons, we find no error in the circuit court's construction of the will or in its adherence to precedent.

Affirmed.

VAUGHT and HUNT, JJ., agree.