Cite as 2022 Ark. App. 172

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-21-117

|  |  |
|---|---|
| EVA MCCANN, LOLA MAY COVELL, AND IRENE MENDES<br><br>APPELLANTS<br><br>V.<br><br>WILLIAM RANDAL CROSS, LAURA LEA CROSS, AND FARM CREDIT SERVICES OF WESTERN ARKANSAS, FLCA<br><br>APPELLEES | Opinion Delivered April 20, 2022<br><br>APPEAL FROM THE SALINE COUNTY CIRCUIT COURT [NO. 63CV-18-406]<br><br>HONORABLE GRISHAM PHILLIPS, JUDGE<br><br>REVERSED AND REMANDED |

**N. MARK KLAPPENBACH, Judge**

This appeal concerns the interpretation of the will of Ada Pitcock. Appellants, Eva McCann, Lola May Covell, and Irene Mendes, are Ada's daughters. Appellees Laura and William Cross are subsequent purchasers of property devised in Ada's will. The Crosses granted a mortgage on the property to appellee Farm Credit Services of Western Arkansas, FLCA.

In 1994, Ada died, and her last will and testament was admitted to probate. Ada's son Newton Pitcock was appointed as executor. The fourth section of her will provides as follows:

FOURTH: I give, will, devise and bequeath to William Pitcock, for his lifetime, the right to live in the house and the following described property, to-wit:

The North half of the North half of the Southeast Quarter of Section 17, Township 1 South, Range 14 West, containing 40 acres, more or less.

with remainder to Newton E. Pitcock and upon his death, then to Eva McCann, Lola May Covell and Irene Mendes, to be held by them as their own and absolute property, in equal shares and share alike.[1]

Ada's son William Pitcock died in 1996. Ada's estate was closed in March 1997 when an order was entered approving the final settlement. The order states that all terms and provisions of Ada's will had been complied with and all assets were vested and distributed

---

[1]Other sections of the will provide as follows:

SECOND: I give, will, devise and bequeath to Newton E. Pitcock, for his lifetime, the following described property . . . :

with remainder to Eva McCann, Lola May Covell and Irene Mendes, to be held by them as their own and absolute property, in equal shares and share alike.

. . . .

THIRD: I give, will, devise and bequeath to John L. Pitcock, for his lifetime, the right to live in the house on the following described property . . . :

. . . .

with remainder to James Louis Pitcock, Kenneth Wayne Pitcock and Tommy Dale Pitcock, to be held by them as their own and absolute property, in equal shares and share alike.

pursuant to the terms of the will.[2] The parties agree that there is no record of any conveyance of the property from Ada's estate.

In January 2007, Newton conveyed the property via warranty deed to his nephew, Curtis Wallace. Newton passed away in September 2016. In January 2018, Wallace conveyed the property via warranty deed to appellees William and Laura Cross. In March 2018, appellants filed a petition to quiet title seeking to have title confirmed in them and an order ejecting the Crosses from the property. They alleged that pursuant to Ada's will, the remainder interest in fee simple absolute vested in them at the time of Newton's death.[3] The Crosses answered and filed a counterclaim seeking a declaratory judgment on the basis of their claim that the remainder interest devised to Newton in the will was fee simple absolute. They asserted the affirmative defenses of the statute of limitations, estoppel, laches, waiver, res judicata, collateral estoppel, and ratification. The Crosses also filed a third-party complaint against Wallace.[4]

At trial, Lola May Covell testified that she and her sisters believed that, pursuant to their mother's will, the subject property was to come to them after Newton's death. Covell learned of Newton's deed to Wallace in 2007 and spoke about it to the attorney who

---

[2]A nunc pro tunc order was entered in August 1997 correcting the property description from the fourth section of the will to state "Range 15 West" instead of "Range 14 West."

[3]Appellants later amended the complaint to add Farm Credit Services, FLCA, as a defendant and request that its mortgage be canceled.

[4]The circuit court later granted the Crosses a default judgment against Wallace. The court found that judgment would be awarded if appellants' petition was granted.

prepared Ada's will. Covell believed that Newton could transfer only a life estate. She said that she and her sisters did not pursue any type of legal action in 2007 because they understood that their rights did not vest until Newton died. Appellants also presented the testimony of Martha Gilbert, a legal secretary and former title examiner, who testified that it was her opinion that the will gave Newton only a life estate in the property. William Cross testified for the defense that he had purchased the property from Wallace for $105,000, and he had been told that Wallace had owned the property for about five years. Cross said that he first learned that Wallace's ownership of the property was in question when he was served with the lawsuit.

The circuit court found that the language in the will—"with remainder to Newton E. Pitcock and upon his death, then to [appellants]"—is unambiguous. Looking at the other provisions of the will and their use of the terms "remainder" and "for his lifetime," the court construed the will to give Newton a "remainder," meaning fee-simple title, "just as it states, with the remaining language having no effect." The court found that evidence of Ada's intent could be gathered from the four corners of the will, and if she had wished to create a life estate in Newton, she would have used the same language as she did in other parts of the will—"for his lifetime." The circuit court also addressed appellees' affirmative defenses and found that appellants' claim was barred by ratification, collateral estoppel, res judicata, the statute of limitations, estoppel, laches, and waiver. Accordingly, the court denied appellants' petition and granted the Crosses' counterclaim.

I. *Interpretation of the Will*

4

In the interpretation of wills, the paramount principle is that the intent of the testator governs. *Carmody v. Betts*, 104 Ark. App. 84, 289 S.W.3d 174 (2008). This intent is to be determined from viewing the four corners of the instrument, considering the language used, and giving meaning to all of its provisions, whenever possible. *Id.* We will construe the words and sentences used in a will or trust in their ordinary sense in order to arrive at the testator's true intention. *Id.* In order to determine the intentions of the testator, consideration must be given to every part of the will. *Id.*

Appellants argue that the circuit court violated these cardinal rules of construction by construing the will in such a way to leave language meaningless. As stated above, the court's order found that the will gave Newton a remainder of the entirety of the estate "with the remaining language having no effect." Thus, according to the circuit court, the language "and upon his death, then to Eva McCann, Lola May Covell and Irene Mendes, to be held by them as their own and absolute property, in equal shares and share alike" has no effect.

We agree with appellants that the court erred in interpreting the will to leave the preceding phrase meaningless. Appellants cite *Rushing v. Mann*, 322 Ark. 528, 910 S.W.2d 672 (1995), where the supreme court interpreted the following will provision: "I give and devise unto my niece, Elizabeth Swanson, for her life, with remainder at her death to Lester Mann for his life, and then unto his bodily heirs, or if no bodily heirs, then to Claude Mann in fee simple." The supreme court held in part that the intent of the testator was to limit Lester Mann's interest to that of a life estate in view of the fact that the devise to him was "*for his life*, and then unto his bodily heirs." 322 Ark. at 530, 910 S.W.2d at 673. The use of

5

the word "remainder" was not dispositive. Here, the circuit court found that *Rushing* was not controlling due to use of the phrase "for his life," which is absent in the case at bar. However, we agree with appellants that there is no specific wording required to create a life estate, and "for his life" has the same meaning as "and upon his death." While the limitation in paragraph 4—"with remainder to Newton E. Pitcock and upon his death"—was different than the limitation used in paragraphs 2 and 3—"for his lifetime"—appellants note that paragraph 4 was the only one creating successive life estates. We agree with appellants that Ada intended to create successive life estates. Pursuant to the intent of the testator, we hold that the will granted Newton a life estate and the remainder fee-simple title to appellants. Accordingly, Wallace lacked marketable title at the time of his conveyance to the Crosses.

## II. *Affirmative Defenses*

We next address the circuit court's findings that appellants' claim was barred by several affirmative defenses. The circuit court found that appellants ratified Newton's actions by failing to state any objection to his 2007 deed despite full knowledge of it. Ratification refers to the express or implied adoption and confirmation by one person of an act or contract performed or entered into in his behalf by another without authority. *Sterne, Agee & Leach, Inc. v. Way*, 101 Ark. App. 23, 270 S.W.3d 369 (2007). When a principal has knowledge of the unauthorized acts of his agent and remains silent when he should speak or accepts the benefit of such acts, he cannot thereafter be heard to deny the agency and will be held to have ratified the unauthorized acts. *Id.* Appellants argue that ratification does

6

not apply here because there was no agency relationship, and appellees concede that the doctrine does not apply. We agree that the circuit court erred in this finding.

The circuit court also found that appellants' claims were barred by res judicata and collateral estoppel "based on the probate court's order." Res judicata bars relitigation of a claim in a subsequent suit when five factors are present: (1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) the first suit was fully contested in good faith; (4) both suits involve the same claim or cause of action; and (5) both suits involve the same parties or their privies. *Powell v. Lane*, 375 Ark. 178, 289 S.W.3d 440 (2008). Furthermore, res judicata bars not only the relitigation of claims that were actually litigated in the first suit but also those that could have been litigated. *Id.* Collateral estoppel requires four elements before a determination is conclusive in a subsequent proceeding: (1) the issue sought to be precluded must be the same as that involved in the prior litigation; (2) that issue must have been actually litigated; (3) the issue must have been determined by a valid and final judgment; and (4) the determination must have been essential to the judgment. *Id.* The party against whom collateral estoppel is asserted must have been a party to the earlier action and must have had a full and fair opportunity to litigate the issue in that first proceeding. *Id.*

We agree with appellants that multiple elements of these doctrines have not been satisfied. The interpretation of the fourth paragraph of Ada's will was not "fully contested" or "actually litigated" in the probate case. As in *Dickerson v. Union National Bank of Little Rock*, 268 Ark. 292, 595 S.W.2d 677 (1980), the circuit court was not called on to interpret

7

the fourth paragraph of the will. *Id.* Appellees have not addressed res judicata or collateral estoppel in their brief. We hold that the circuit court clearly erred in these findings.

The circuit court next found as follows:

> In the case at bar, Petitioners' claim that the 2007 Deed was invalid to convey title have accrued, and the limitations period has run. The instrument, which Petitioners allege was improper, was filed of public record and the Petitioners had actual knowledge of it since 2007. They, therefore, are barred from attacking the 2007 Deed by Ark. Code Ann. § 18-61-101, and they are, likewise, barred by estoppel, laches, or waiver due to their knowledge of Newton's and their failure to act to the detriment of the Crosses and Farm Credit, who relied on their inaction to seek an interpretation of the Will, earlier, or to seek to set aside the 2007 Deed.

Pursuant to Arkansas Code Annotated section 18-61-101(a)(1) (Repl. 2015), "No person or his or her heirs shall have, sue, or maintain any action or suit, either in law or equity, for any lands, tenements, or hereditaments after seven (7) years once his or her right to commence, have, or maintain the suit shall have come, fallen, or accrued." Accordingly, appellants had seven years to bring their action once their right to bring suit accrued. Contrary to the circuit court's finding that the limitations period commenced in 2007, appellants argue that they did not have a right to bring the suit until Newton's death in 2016. The supreme court has held that the statute of limitations does not begin to run against the remainderman until the termination of the life tenancy. *Raborn v. Buffalo*, 260 Ark. 531, 542 S.W.2d 507 (1976). Because we hold that appellants were the remaindermen following Newton's life estate, we agree that their cause of action did not accrue until Newton's death in 2016. Accordingly, the statute of limitations had not yet expired when they brought suit.

8

The defense of laches is based on the equitable principle that an unreasonable delay by the party seeking relief precludes recovery when the circumstances are such as to make it inequitable or unjust for the party to seek relief. *Larco, Inc. v. Strebeck*, 2010 Ark. App. 263, 379 S.W.3d 16. The laches defense requires a detrimental change in the position of the one asserting the doctrine as well as an unreasonable delay by the one asserting his rights against whom laches is invoked. *Id.* As stated above, appellants' cause of action did not accrue until Newton's death. Thus, despite having knowledge of Newton's deed since 2007, appellants' failure to act during this time does not constitute unreasonable delay. Accordingly, we hold that the circuit court's laches finding was in error.

The elements of equitable estoppel are (1) the party to be estopped must know the facts; (2) the party must intend that its conduct shall be acted on or must so act that the party asserting estoppel had a right to believe the other party so intended; (3) the party asserting estoppel must be ignorant of the facts; and (4) the party asserting estoppel must rely on the other party's conduct to his detriment. *Chitwood v. Chitwood*, 92 Ark. App. 138, 211 S.W.3d 547 (2005). A party who, by his acts, declarations, or admissions or by his failure to act or speak under circumstances where he should do so, either with design or willful disregard of others, induces or misleads another to conduct or dealings that he would not have entered upon, but for such misleading influence, will not be allowed, because of estoppel, afterward to assert his right to the detriment of the person so misled. *Sterne, Agee & Leach, Inc.*, 101 Ark. App. 23, 270 S.W.3d 369. Appellants provided testimony that they consulted an attorney regarding Newton's deed to Wallace, but they did not take legal action at that time

9

because they understood that Newton had only a life estate, and they had no rights to the property until his death. In light of this evidence, we do not think that appellants, with full knowledge of the facts, acted with design or willful disregard of others.

Waiver is the voluntary abandonment or surrender by a capable person of a right known to him to exist, with the intent that he shall forever be deprived of its benefits, and it may occur when one, with full knowledge of the material facts, does something that is inconsistent with the right or his intention to rely upon it. *Smith v. Walt Bennett Ford, Inc.*, 314 Ark. 591, 864 S.W.2d 817 (1993). Appellants argue that there was no evidence that they did anything to intentionally abandon their interest because they consulted an attorney and acted in conformity with their belief that Newton had a life estate, and they had no right to seek possession until Newton's death. We agree with appellants that they did not voluntarily abandon their rights; thus, the finding of waiver was in error. Accordingly, because the circuit court erred in its interpretation of the will and the application of the affirmative defenses, we reverse its order and remand for further proceedings consistent with this opinion.

Reversed and remanded.

GLADWIN and HIXSON, JJ., agree.

*Baxter Law Firm, PLLC*, by: *James R. Baxter*, for appellants.

*McMullan & Brown*, by: *Amy Clemmons Brown*, for appellees.

10