Frank A. BAILEY, Jr. and Christy Anne B. Chilcott *v.* DELTA TRUST & BANK, Successor Trustee to Union National Bank N/K/A Bank of America, N.A., as Trustee of the Frank A. Bailey Irrevocable Trust; and Doris H. Bailey

04-411 198 S.W.3d 506

Supreme Court of Arkansas
Opinion delivered November 18, 2004

[Rehearing denied January 6, 2005.]

426

*John C. Lessel*, for appellants/cross appellees Frank A. Bailey, Jr. and Christy Anne B. Chilcott.

*Bailey, Trimble, Lowe, Sellars & Thomas*, by: *Rick Sellars*, for appellee/cross appellant Doris H. Bailey.

TOM GLAZE, Justice. This appeal involves the interpretation of a trust agreement. This court assumed jurisdiction of the appeal because it also requires us to consider the proper manner for determining the amount of a supersedeas bond pursuant to Ark. R. Civ. P. 62(d). Our jurisdiction is therefore proper under Ark. Sup. Ct. R. 1-2(b)(6).

On August 9, 1989, Frank A. Bailey, Sr. ("Bailey") executed a revocable trust ("the Bailey Trust"), which became irrevocable on the date of his death, December 12, 2001. The Bank of America (formerly Union National Bank) was named as trustee ("the Bank" or "the Trustee"). Bailey had married Doris Bailey (known as "Dottie") in 1978. At the time of his death, Bailey was survived by Dottie and by two adult children from a prior marriage, Frank A. Bailey, Jr. ("Frank") and Christy Anne B. Chilcott ("Christy"). Dottie also had a son, Robert C. Rogers, from a former marriage. Dottie was the sole lifetime beneficiary under the Bailey Trust. Frank and Christy were named as remainder beneficiaries, who would receive all remaining trust assets after the termination of the Trust upon Dottie's death. Paragraph 3, the dispositive provisions of the Bailey Trust, which are at issue in this appeal, provided in relevant part as follows:

> (b) In the event SETTLOR is survived by DORIS H. BAILEY, then for her lifetime, the TRUSTEE shall pay to DORIS H. BAILEY or deposit in her personal checking account, or pay for her use and benefit such sums from the net income and/or principal of the Trust as the TRUSTEE shall deem proper or necessary to provide for her care, comfort, support, maintenance, and medical care.

> (c) At the request of SETTLOR, or at the request of DORIS H. BAILEY after SETTLOR'S death, or upon the declaration of incompetency of SETTLOR, or upon the declaration of incompetency of DORIS H. BAILEY after SETTLOR'S death, the

TRUSTEE shall pay on behalf of the SETTLOR and/or DORIS H. BAILEY all valid debts or obligations incurred by them which are brought to the attention of the TRUSTEE by its receipt of a statement for services rendered to or goods purchased by or for the SETTLOR and/or DORIS H. BAILEY.

After Bailey's death, Dottie demanded reimbursement from the Bailey Trust for one hundred percent of her expenses from the date of Bailey's death, on December 12, 2001, through August 31, 2003. In September of 2003, the Bank, as Trustee, filed a petition for instruction with the Pulaski County Circuit Court. In its petition, the Bank noted that disputes had arisen concerning Bailey's intent with respect to the terms of the Trust. Particularly, the Bank stated, Frank and Christy argued that the only "valid debts and obligations" that the Trust should pay from Trust assets were those that the Trustee deemed proper or necessary to provide for Dottie's care, comfort, support, maintenance, and medical care; Dottie, on the other hand, asserted that all debts or obligations she incurred for services rendered or goods purchased should be paid from Trust assets upon presentment of all legitimate bills for payment. Therefore, the Bank sought a clarification of the Trust language and terms regarding the beneficiaries' rights and the Trustee's duties.

Frank and Christy filed a response in which they agreed with the Bank that the Trust was ambiguous. In addition, Frank and Christy argued that the dispositive provisions should be read "as a whole," so that the "valid debts or obligations" for which the Trust are obligated under paragraph 3(c) are those which meet the standard of paragraph 3(b), as being "proper or necessary to provide for Doris H. Bailey's care, comfort, support, maintenance, and medical care." Dottie also filed a response and counterclaim to the Bank's petition for instruction, denying that the terms of the Trust were unclear and asserting that she had the right to invade the corpus of the Trust.

The trial court held an initial hearing on the Bank's petition on January 8, 2003. At that time, the parties and the court agreed that the first issue to be decided was whether the terms of the Trust were ambiguous or unambiguous. After that hearing, the trial court sent out a letter opinion, subsequently incorporated into an order, in which the court found that the Trust was unambiguous. In addition, the court interpreted the relevant terms of the Trust to mean that the language of subsection 3(b), directing the Trustee to pay such sums from the income and/or principal as "the Trustee

shall deem proper or necessary to provide for her care, comfort, support, maintenance, and medical care," imposed upon the Trustee an affirmative, mandatory obligation to make those payments. The court also concluded that the language gave the Trustee the authority to utilize its discretion in determining what sums are "proper and necessary" for Dottie's "care, comfort, support, maintenance, and medical care." The court determined that this affirmative obligation of the Trustee under subsection 3(b) existed even if the Trustee never receives a "receipt of a statement for services rendered to or goods purchased by" Dottie as referenced in subsection 3(c). However, the court wrote, it might be that the Trustee, upon the receipt and payment of such statements, in its discretion could determine that such payments satisfy all or a part of the monies necessary to fulfill its obligation pursuant to 3(b).

With respect to subsection 3(c), the court found that the terms of that paragraph imposed "a separate affirmative duty" on the Trustee to "pay on behalf of Doris H. Bailey all valid debts or obligations incurred by Doris H. Bailey which are brought to the attention of the Trustee by its receipt of a statement for services rendered to or goods purchased by Doris H. Bailey."

After receiving the letter opinion from the court, the Bank and Frank and Christy asked the court to reconsider its opinion and accept briefs from the parties concerning how the Trust ought to be interpreted. The court denied those parties' requests, informing the parties that they could file motions for reconsideration once an order had been entered. On January 27, 2003, the Bank wrote to the court, again asking the court to reconsider its letter opinion, and seeking further instruction as to how the Trust terms should be interpreted. The trial court, however, entered an "Order of Instruction" on January 31, 2003, reincorporating its rulings from the earlier letter opinion, as set out above. The court also directed the Bank to ask for additional instruction in the form of an Amended Petition for Instruction, in order to give the other parties a chance to respond.

The Bank and Frank and Christy filed timely motions to amend the findings, for new trial, or for reconsideration. Both parties alleged that the court had erred by rendering judgment on the interpretation of the Trust terms without giving the parties a full opportunity to be heard and present evidence on the issues. They further argued that the court erred by concluding that the Trust was unambiguous, and that, even assuming the Trust was

unambiguous, the court had nonetheless erred in its construction of the Trust's terms. In addition, the Bank argued that the court's interpretation effectively made the Bank a guardian of Dottie's person, in violation of Arkansas law.

Dottie filed a response on February 27, 2003, in which she noted that, contemporaneously with the trial court's order, she had presented to the Bank bills she had paid and for which she sought reimbursement. Dottie further claimed that the Bank had not yet paid her bills, and that the court should therefore hold the Bank in contempt.

The trial court denied the Bank's and Frank and Christy's motions for reconsideration by order entered March 5, 2003. On March 25, 2003, the Bank filed its second amended petition for instruction, petition to withdraw as Trustee, and petition to modify Trust.

After seeing Dottie's requests for reimbursement, Frank and Christy answered the Bank's petition for instruction and, in the same pleading, filed a cross-claim against Dottie for waste, bad faith, and breach of duty. In support of their waste claim, Frank and Christy noted that, as of December 31, 2002, the total value of the assets of the Trust was $695,537.85, of which $224,600 was comprised of the value of the real estate owned by the Trust and in which Dottie was living. In addition, Frank and Christy alleged that Dottie's requests for reimbursement amounted to $130,450.03 and $69,766.78; assuming that the Trust paid those amounts, the Trust would be depleted by $200,216.81, or over 42.5% of the Trust's assets. At that rate, they claimed, the assets of the Trust would be depleted within three years.

After the trial court denied the Bank's motion to withdraw as Trustee and Dottie's motion to dismiss Frank and Christy's cross-claims, the case proceeded to trial on September 23, 2003. On September 30, 2003, the trial court entered an order denying the motions for reconsideration filed by the Bank and by Frank and Christy. In addition, the court reaffirmed its conclusion that the Bank, as Trustee, had an affirmative obligation to exercise its discretion to determine what sums it deemed necessary for Dottie's "care, comfort, support, maintenance, and medical care." The court found that the Bank's obligation to exercise its discretion in these respects existed independent of the provision of financial information by Dottie, but the Bank's exercise of discretion would only be reviewed from the perspective of information that was

reasonably available to the Bank at the time that it exercised its discretion. In addition, the court found that paragraph 3(b) did not impose upon Dottie any duty to provide the Bank with evidence of her financial condition. The court further found that the phrase "valid debts or obligations" meant, "generally speaking, any legal or contractual liabilities of [Dottie] for goods or services." The court ordered the Bank to distribute the amount of $91,778.84 to Dottie for reimbursement for "valid debts or obligations"; however, the court also ordered Dottie to reimburse the Bank $13,942.56 for monies paid to her by the bank that were not for "valid debts or obligations." The court denied, without further comment, Frank and Christy's cross-claims for waste, bad faith, and breach of duty.[1]

Frank and Christy filed a timely notice of appeal; in addition, they filed a motion for supersedeas and a motion for attorney's fees. Dottie also filed a motion for attorney's fees. Following a hearing, the trial court entered an order granting the motion for supersedeas and staying the execution of the September 30, 2003, order "upon the posting by the respondents Frank A. Bailey, Jr. and Christy Anne Chilcott, within ten (10) days of the entry of this order of a cash bond . . . in the amount of . . . $181,792.28." The order also provided that, upon the posting of the bond, the Bank was to withhold payment to Dottie of the judgment amount and the amounts of her attorney's fees, but was to pay Dottie $9,600.00 a month for her care, maintenance, and support during the pendency of the appeal. The court awarded attorney's fees to Dottie and to the Bank, and conditionally granted Frank and Christy's motion for attorney's fees, awarding them $26,415.49, which was only to be paid in the event they were successful on appeal; if they lost on appeal, the court directed that the amount of attorney's fees and costs payable to them was to be reduced by all attorney's fees, costs, and expenses incurred by either the Trustee or Dottie from October 28, 2003, forward.

Frank and Christy filed a notice of appeal from the order pertaining to the supersedeas bond and the attorney's fees; Dottie also filed a timely notice of cross-appeal from that part of the order awarding Frank and Christy attorney's fees. Frank and Christy's arguments on appeal fall into three general categories: 1) the court

---

[1] The court also granted the Bank's motion to withdraw as Trustee, appointing Delta Trust and Bank as successor Trustee. In addition, the court set forth guidelines to assist Dottie in preparing appropriate requests for disbursement in the future.

erred in its construction of the provisions of the Trust; 2) the court erred in rejecting Frank and Christy's cross-claims of waste, bad faith, and breach of duty; and 3) the court erred with respect to the supersedeas bond. Dottie's cross-appeal urges that the court erred in awarding attorney's fees to Frank and Christy.

In their first point on appeal, Frank and Christy contend that the trial court misinterpreted the terms of the Bailey Trust. The cardinal rule in construing a trust instrument is that the intention of the settlor must be ascertained. *Aycock Pontiac, Inc. v. Aycock*, 335 Ark. 456, 983 S.W.2d 915 (1998). In construing a trust, we apply the same rules applicable to the construction of wills. *Id.* The paramount principle in the interpretation of wills is that the intent of the testator (or the settlor, in the case of a trust) governs. *Id.* (citing *In re: Estate of Lindsey*, 309 Ark. 596, 832 S.W.2d 808 (1992)). This intention is to be determined from viewing the four corners of the instrument, considering the language used, and giving meaning to all of its provisions, whenever possible. *Id.* This court will construe the words and sentences used in a will or trust in their ordinary sense in order to arrive at the testator's true intention. *Estate of Wells v. Sanford*, 281 Ark. 242, 663 S.W.2d 174 (1984). In order to determine the intentions of the testator, consideration must be given to every part of the will. *Martin v. Simmons First Nat'l Bank*, 250 Ark. 774, 467 S.W.2d 165 (1971).

Although Frank and Christy argued to the trial court that the terms of the Trust agreement were ambiguous, they have abandoned that challenge on appeal. Instead, they argue that, even assuming the language to be unambiguous, the trial court erred in its interpretation of the Trust's terms. When the terms of a trust are unambiguous, it is the court's duty to construe the written agreement according to the plain meaning of the language employed. *Acklin v. Riddell*, 42 Ark. App. 230, 856 S.W.2d 322 (1993) (citing *C. & A. Constr. Co. v. Benning Constr. Co.*, 256 Ark. 621, 509 S.W.2d 302 (1974)). The language at issue in the present case consists of the following two phrases: 1) "such sums . . . as the Trustee shall deem proper or necessary to provide for [Dottie's] care, comfort, support, maintenance, and medical care"; and 2) "the Trustee shall pay on behalf of . . . [Dottie] all valid debts or obligations . . . for services rendered to or goods purchased by or for . . . [Dottie]." The issue for this court to resolve is what the settlor, Frank A. Bailey, Sr., intended with these provisions.

As noted above, the trial court found that these provisions imposed upon the Trustee an obligation to exercise its discretion

in order to determine what sums would be necessary for Dottie's care, comfort, support, maintenance, and medical care, and that this obligation existed independent of the provision of financial information by Dottie to the Trustee. In addition, the court found that paragraph 3(b) does not impose upon Dottie a duty to provide the Trustee with evidence of her financial condition. The court further found that, under paragraph 3(c), the Trustee was obligated to pay all of Dottie's valid debts and obligations, without requiring Dottie to provide evidence of her financial condition, but noted that "valid debts and obligations" would only include "any legal or contractual liabilities of [Dottie] for goods or services."

Frank and Christy argue that the trial court erroneously interpreted paragraph 3(c) in isolation, without considering the other provisions of the Trust. In particular, they point to paragraph 5 of the Trust, which provides, in relevant part, as follows:

> In the event that ... DORIS H. BAILEY is declared incompetent after SETTLOR'S death, then the TRUSTEE shall apply for ... her benefit only such portion of the income and/or principal of the Trust as the TRUSTEE, in its sound and sole discretion, shall deem necessary to support and maintain ... DORIS H. BAILEY.

In addition, paragraph 3(c) provides that "at the request of [Dottie] after Settlor's death . . . or upon the declaration of incompetency of [Dottie] after Settlor's death," the Trustee shall pay on Dottie's behalf all valid debts and obligations. According to Frank and Christy, these two clauses dealing with Dottie's incompetency mean that Bailey's intent was to impose upon the Trustee a duty to determine the needs of support and maintenance of the beneficiary after her incompetence. For paragraph 5 and paragraph 3(c) to have any consistency, they contend, the "valid debts and obligations" of paragraph 3(c) must be judged by the Trustee's exercise of its "sound and sole" discretion in paragraph 5.

Dottie, on the other hand, points out that Bailey's intent is clear, and that it is plain that he intended for the Trust to take care of her first, and to leave to his children anything that might be left over after Dottie had been taken care of. In support of this interpretation, she notes that the Trust makes reference to her and her needs eleven times, whereas it refers to Frank and Christy only once, in the "termination of Trust" clause, which provides as follows:

> [T]his Trust shall terminate at the time of the death of the SETTLOR or DORIS H. BAILEY, whichever last occurs, and, after

> payment of all debts and obligations of such survivor, the principal and accumulated income, *if any*, shall be distributed [in equal shares to Frank and Christy].

(Emphasis added.)

Because the remainder of the Trust goes to Frank and Christy *in the event any principal and accumulated income remain* after payment of all debts and obligations, Dottie argues, it is therefore clear that Bailey intended her welfare to be the paramount concern of the Trust. In addition, she notes that it would be illogical for Bailey, Sr., as settlor, to give his widow the right to demand payments of valid debts and obligations brought to the Trustee's attention, if his real intent had been to give the Trustee sole discretion over all spending of the Trust's assets. We agree with Dottie.

■ It is apparent from the terms of the Trust, which speaks most frequently of taking care of Dottie's needs and obligations, that Bailey, Sr. intended Dottie to be the primary object of his bounty. In *Martin v. Simmons First National Bank*, 250 Ark. 774, 467 S.W.2d 165 (1971), this court came to a similar conclusion where the testator's will and trust left the residuary beneficiaries shares of the estate "only after all debts, taxes and expenses of administration had been paid, all other specific bequests had been distributed, and the trust established." *Martin*, 250 Ark. at 780. The residual beneficiaries were "to benefit from the trust only to the extent that it has not been exhausted in providing for [the life beneficiary] in the eventualities mentioned in the [will]." *Id.*

In addition, it was proper for the court to conclude that Dottie was not required to provide evidence of her financial condition. In *Martin, supra,* this court held that "[u]nless something appears in the will indicating a different purpose, it is ordinarily presumed that the trustor intended the beneficiary to be supported and maintained from estate income, or as is sometimes the case, from sale of a part of the corpus." *Martin*, 250 Ark. at 780 (quoting *Cross v. Pharr*, 215 Ark. 463, 221 S.W.2d 24 (1949)). The *Martin* court further pointed out that if the testator had intended for the beneficiary to be required to exhaust her own resources first, before accessing the trust's assets, the testator could have spelled that out clearly; however, in the absence of such a declaration, it was apparent that the intent of the testator was to provide for the beneficiary's expenses out of the trust, "without regard to any resources that [the beneficiary] might have." *Id.* at 785.

Here, Frank Bailey, Sr. did not require that Dottie exhaust all of her own assets before being able to invade the Trust, and provided that his children were to receive only the "principal and accumulated income, *if any*" after Dottie passes away. We conclude that the trial court properly interpreted the Trust agreement as requiring the Trustee to provide first and foremost for Dottie's "care, comfort, support, maintenance, and medical care" and her "valid debts and obligations."[2]

Frank and Christy's next arguments on appeal concern the trial court's dismissal of their claims of waste, bad faith, and breach of fiduciary duty. In their cross-claims against Dottie, Frank and Christy alleged that 1) her presentment of claims for reimbursement of 100% of her living expenses would constitute the waste of the Trust assets; 2) Dottie could only be depleting the Bailey Trust's assets in order to preserve her own assets for her own son by a previous marriage; and 3) her demand for such a large piece of the Trust's assets constituted a breach of her duty, as life beneficiary, to preserve the corpus of the Trust for the remainder beneficiaries. The trial court denied all three cross-claims, finding that there was no evidence presented that Dottie had attempted to commit waste of the Trust assets or that her actions — or those of her son, as her attorney-in-fact — were undertaken in bad faith.

No rule of public policy prohibits a testator from conferring on a life beneficiary the right to invade the corpus of a trust. *Alexander v. Alexander*, 262 Ark. 612, 624, 561 S.W.2d 59, 65 (1978). However, the *Alexander* court wrote further as follows:

> Even when the testamentary grant creates a life estate rather than a trust, the life tenant having the discretion to dispose of the subject property for his own benefit must exercise his discretion in good faith and not squander or waste the property to prevent the

---

[2] Frank and Christy have raised a subpoint in which they contend that their interpretation of the trust instrument is supported by provisions from the Internal Revenue Code. However, although Frank and Christy raised this argument in their motion for a new trial or reconsideration, they do not point out where Dottie responded to the issue, nor is it apparent that they pursued the issue at any hearing before the court or at trial. Further, it does not appear that the trial court ever specifically issued a ruling on this point. It is the appellants' burden to obtain a ruling on an issue in order to preserve the argument for appeal. *See, e.g., Ghegan & Ghegan v. Barclay*, 345 Ark. 514, 49 S.W.3d 652 (2001); *Junkin v. Northeast Ark. Internal Medicine Clinic*, 344 Ark. 544, 42 S.W.3d 432 (2001). Therefore, because Frank and Christy failed to obtain a ruling, we do not consider this point on appeal.

remainder of the estate from going to the remainderman. A life tenant normally has the duty to conserve the estate. The power of invasion by the life tenant of "as much of the principal . . . as in his judgment is necessary and proper" must be exercised in good faith. A power "to be used for his own personal benefit insofar as he requires it" does not limit the power to the "needs" or "support" of the life tenant, but it requires action in good faith toward the remainderman. Even the demand or request by a lifetime beneficiary of a trust having the power to consume the corpus must be made in good faith and not for the purpose of deleting the corpus and defeating the intention of the settlor. Where the purpose of the income beneficiary with sole discretion to invade the corpus is to defeat the rights of the remainderman, the exercise of the discretion is not in good faith. It has been held that a demand for the entire corpus of a trust by a surviving spouse having an absolute power of invasion is premature when made before the trustee has come into possession of the corpus. Such a demand at any time must be in good faith and not the result of disagreements.

*Id*. at 628-29, 561 S.W.2d at 67-68 (internal citations omitted).

In this case, the trial court reviewed the documents that Dottie had submitted to the Bank for reimbursement and produced a spreadsheet reflecting its conclusions regarding which of the items it considered proper for reimbursement, which items were not proper, and a number of items for which Dottie was required to reimburse the Trust. In its conclusions, the court found that the following expenditures were not proper for reimbursement or disbursement by the Trust, and denied Dottie's request for payment: 1) charitable contributions and gifts (totaling $21,858.00); 2) items that had been duplicated in the requests for reimbursement ($116,836.67); 3) items for which there was insufficient evidence submitted for the court to make a determination that the item was a valid debt of obligation, including receipts for fast-food meals, items labeled as "reimbursement to Robert Rogers," and charges for payment to a veterinarian for pets not owned by Dottie ($3,006.66); 4) items that were not valid debts or obligations, such as ATM withdrawals, credit card payments, payments for Dottie's first husband's funeral expenses, payroll payments to Dottie's son Robert Rogers, and other such items ($69,633.29); and 5) items for which there was both insufficient evidence and that was at least partially not a valid debt or obligation of Dottie's ($4,584.45).

Frank and Christy argue that the documents submitted by Dottie to the Bank for reimbursement, and which the court found to be improper items for reimbursement, prove that Dottie was wasting the Trust's assets. However, Sandra Walker, the Bank's trust officer handling the Bailey Trust, testified at trial that the Bank did not provide Dottie with information on how Dottie should go about submitting requests for disbursement or reimbursement. Prior to Frank Bailey, Sr.'s death, Walker stated, the Trust would transfer an average of $12,000 a month to the Baileys' personal checking account; however, after Bailey's death, the Trust ceased making the monthly payments. Walker testified that she spoke with Dottie about how they would need to make changes in the distributions from the Trust, but Dottie was never forthcoming about her financial situation and her needs. However, Walker further testified that Dottie was "not financially astute and gets confused easily with any financial matters." Robert Rogers, Dottie's son by her first marriage, testified that he prepared his mother's submissions to the Trust, but he never received "any instruction from anyone as to how to prepare [the] documentation for submission."

█ Given the facts presented to the trial court, the trial court reached the correct conclusion: there were many items that were not "valid debts and obligations" proper for reimbursement, and Dottie would be required to reimburse the Trust for many of those items, but there was no evidence that Dottie had made those requests in bad faith with the intent to waste the Trust's assets. Frank and Christy argue on appeal that there could be no other motive for Dottie's seeking reimbursement for all of her living expenses, but they presented absolutely no proof at trial as to what her motives might have been. To the contrary, there was testimony that the Bank never gave Dottie any instruction on how to request disbursements or reimbursements; therefore, it is likely that Dottie, whom Sandra Walker admitted was "not financially astute,"[3] simply did not know how to present her requests and just

---

[3] For example, Walker testified that Dottie called her one day to ask about some large charges on her Bank of America credit card statement. What apparently happened was that Dottie had continued to write checks out of the Bank of America checking account to which the Trust had made monthly deposits before Bailey died, not realizing that the Trust had ceased making such deposits upon Bailey's death. The credit card charges represented overdraft-protection payments that the Bank provided automatically as a service to account holders.

gave the Bank everything she had. Because Frank and Christy failed to present a prima facie case that Dottie was acting in bad faith and wasting the Trust's assets, the trial court did not err in dismissing their cross-claims.

In their final point on appeal, Frank and Christy argue that the trial court erred with respect to both the amount and nature of the supersedeas bond that Frank and Christy sought to post after the judgment was entered in this case. Following the trial court's order, Frank and Christy filed a motion for supersedeas, in which they proposed a bond in the amount of $20,000. The motion asserted that Dottie had sufficient assets and income apart from the Bailey Trust to meet her financial obligations during the pendency of the appeal, and it claimed that the Trust itself had sufficient assets to satisfy the judgment should the appeal not be successful. The proposed $20,000 represented an amount that Frank and Christy estimated to be equal to the cost to Dottie Bailey of borrowing the estimated amount that would not otherwise be available for distribution from the Bailey Trust with respect to the judgment and for additional items for distribution claimed by Dottie for the period pending the appeal, plus reasonable appeal costs.[4]

Dottie objected to Frank and Christy's motion and their suggested bond, arguing instead that they should be required to post a bond of $260,000.00, which would cover the liquidated sum currently due to her under the terms of the judgment, together with an amount sufficient to cover her reasonably expected monthly expenses during the appeal.

After a hearing, the trial court entered an order granting the motion for supersedeas, but required the posting of a bond in the amount of $181,792.28. The court calculated this figure in the following manner:

> The supersedeas bond amount has been determined from the record by: (1) totaling the amounts submitted to the Trustee for

---

[4] To arrive at the figure of $20,000.00, Frank and Christy figured that Dottie's reimbursement requests had been receiving an average of $12,000 per month, or an average of $144,000 per year. Adding the amount that Dottie had been required to reimburse the Trust brought that amount up to $235,778.84. Frank and Christy asserted that, if Dottie were required to borrow that $235,778.84, the interest for one year (the time the appeal would probably take), her interest (calculated at 7%) on that amount would be $16,504.52. They then rounded up to $20,000.00 to add "sufficient funds to cover the costs of appeal[.]"

utilities, healthcare, gasoline, taxes, and accounting fees, from January 1, 2002, through the present date; (2) factoring the amounts previously paid to respondent Doris Bailey by the Trustee; (3) adding the amounts ordered to be paid to . . . Doris Bailey in the judgment; (4) adding the amounts that would be payable to the respondent Doris Bailey for utilities, healthcare, gasoline, taxes, and accounting fees for an appeal twelve (12) months in duration; (5) deducting the monthly sums received from other sources by Doris Bailey; and (6) adding interest at the rate of ten percent (10%) per annum during the pendency of the twelve month appeal period, graduated for the amounts accruing each month during the twelve month appeal period.

In addition, the court ordered that, in the event Frank and Christy posted the supersedeas bond, the Trustee was to pay Dottie $9,600 per month for her "care, maintenance, and support" during the pendency of the appeal, noting that, in the event the appeal were affirmed, the $9,600-per-month payments would be offset against all amounts owed to Dottie pursuant to the judgment. Should Frank and Christy be unable to post the bond, the order provided, the parties were directed to proceed under the terms of the judgment.

On appeal, Frank and Christy argue that the trial court erred in requiring them to post the higher supersedeas bond, because the amount of the bond did not take into consideration the fact that the Trust would be available for Dottie to satisfy the judgment if the appeal were denied.

■ Rule 62 of the Arkansas Rules of Civil Procedure and Ark. R. App. P.—Civ. 8 govern supersedeas bonds. Rule 62(d) provides that, "[w]hen an appeal is taken, the appellant by giving a supersedeas bond may obtain a stay[.]" Rule 8(c) provides as follows:

> Whenever an appellant entitled thereto desires a stay on appeal, he shall present to the court for its approval a supersedeas bond which shall have such surety or sureties as the court requires. The bond shall be to the effect that appellant shall pay to appellee all costs and damages that shall be affirmed against appellant on appeal; or if appellant fails to prosecute the appeal to a final conclusion, or if such appeal shall for any cause be dismissed, that appellant shall satisfy and perform the judgment, decree or order of the circuit court.

The purpose or effect of a supersedeas bond is to secure the payment of a judgment following its affirmance on appeal. See *Ryder Truck*

*Rental, Inc. v. Sutton,* 305 Ark. 374, 807 S.W.2d 909 (1991). Rule 8(c) affords the court sufficient discretion to marshal security, so long as security remains the ultimate goal. The phrase "as the court requires" in Rule 62 "clearly gives the court discretion to determine when and to what extent a supersedeas bond must be secured. *Ryder Truck Rental,* 305 Ark. at 379. The bond must be sufficient in amount to guarantee that the appellant will pay the appellee "all costs and damages that shall be affirmed against appellant on appeal," and these costs and damages "include interest on the judgment and all costs and damages for delay that may be adjudged against [the] appellant on appeal or which may result from dismissal or affirmance of the decision appealed." *Schramm v. Piazza,* 53 Ark. App. 99, 918 S.W.2d 733 (1996); *see also Home Mutual Fire Ins. Co. v. Jones,* 62 Ark. App. 182, 969 S.W.2d 675 (1998) (rejecting proposed supersedeas bond when the amount offered would not cover the costs of interest on the judgment). Ark. R. App. P.—Civ. 8 and Rule 62 "authorize[ ] the court to determine on a case-by-case basis the extent to which an appellee's judgment may or may not be in jeopardy and to marshal security of a kind and sufficient degree to secure the payment of the judgment following affirmance on appeal." *Ryder Truck Rental,* 305 Ark. at 380.

■ Although Frank and Christy appear to argue that the trial court abused its discretion in setting the amount of the supersedeas bond, they fail to address the fact that the trial court properly took into account the "costs and damages" to which Dottie would be entitled if she prevails on appeal. The $20,000 they proposed would not even come close to covering the amount of the judgment Dottie was awarded. As Dottie points out, the proper calculation for determining the amount of the supersedeas bond would be for the amount of money she would have received from the Trust as it would have been paid to her under the judgment. The amount also includes a sum to compensate her for the delay she would suffer in not having access to money the Trust would otherwise pay her when she was entitled to it. As she notes, these sums amount to vastly more than the $20,000 proposed by Frank and Christy.

■ In addition, given the careful calculations in which the trial court engaged and the thorough consideration of the various factors enumerated above to determine an appropriate amount, it clearly cannot be said that the trial court abused its discretion.

Abuse of discretion is a high threshold that does not simply require error in the trial court's decision, but requires that the trial court act improvidently, thoughtlessly, or without due consideration. *O'Neal v. State*, 356 Ark. 674, 158 S.W.3d 175 (2004); *Nazarekno v. CTI Trucking Co.*, 313 Ark. 570, 856 S.W.2d 869 (1993). It is obvious that the trial court wanted to ensure that Dottie would be provided for during the pendency of the appeal, in accord with her late husband's intentions. In a child-support case, where the parent paying support sought to appeal the support order, this court held that "other considerations must be taken into account with respect to a decree for . . . child support. Despite the dissolution of the marriage the husband may still be responsible for the support of . . . his children. Those dependents are not to be left penniless during the pendency of an appeal." *Goodin v. Goodin*, 240 Ark. 541, 400 S.W.2d 665 (1966); *see also Rogers v. Rogers*, 80 Ark. App. 430, 97 S.W.3d 429 (2003) (noting that the purpose of a supersedeas is to maintain the status quo pending the period the judgment is superseded, and upholding the trial court's decision to .enforce a support award in spite of a supersedeas).

▪ Although the present case is obviously not a child-support case, it nevertheless involves the provision of financial support to an elderly, frail, and ailing woman whose husband sought to ensure that her needs would be met. The trial court examined all of the relevant facts, including the amounts that would be necessary to provide for Dottie's maintenance and care during the pendency of the appeal, and determined an amount that would be sufficient to cover her costs during that time — i.e., an amount sufficient to cover "all costs and damages that shall be affirmed against appellant on appeal." Ark. R. App. P.—Civ. 8(c). In short, we simply disagree with Frank and Christy that the trust assets replace the need for a supersedeas bond under these facts.

▪▪ Frank and Christy raise an alternative argument that the court erred in assessing interest at the rate of 10% per annum, arguing that this court held in *Hartford Fire Insurance Company v. Sauer*, 358 Ark. 89, 186 S.W.3d 229 (2004), that the maximum interest rate permitted under the Arkansas Constitution would be five percent over the primary credit rate. However, this case had obviously not been decided when the trial court entered its supersedeas order on October 28, 2003, and the trial court properly applied the law that was in effect at that time. *See Carroll*

*Elec. Coop. Corp. v. Carlton*, 319 Ark. 555, 892 S.W.2d 496 (1995). Finally, Frank and Christy assert that the trial court erred by requiring the distribution to Dottie of $9,600.00 per month in addition to the posting of the $181,792.28 supersedeas bond. However, as Frank and Christy were not able to post the bond, and the $9,600.00-per-month distributions are not being made, this alternative argument is moot.

We now turn to Dottie's sole argument on cross-appeal, wherein she contends that the trial court erred in awarding attorney's fees to Frank and Christy. In its October 28, 2003, order, the trial court conditionally granted attorney's fees to Frank and Christy in the amount of $26,415.49. However, the court noted that they would not receive this amount unless they prevailed on appeal, and if they lost on appeal, "the amount of attorney's fees and costs payable to the respondents . . . shall be reduced by all attorney's fees, costs, and expenses incurred by either the Trustee/Successor Trustee and/or Doris H. Bailey, from October 28, 2003, forward."

The trial court erred in awarding attorney's fees. The general rule is that attorney's fees are not allowed except when expressly provided for by statute. *Chrisco v. Sun Industries, Inc.*, 304 Ark. 227, 800 S.W.2d 717 (1990). Ark. Code Ann. § 16-22-308 (Repl. 1999) provides as follows:

> In any civil action to recover on . . . [a] breach of contract, unless otherwise provided by law or the contract which is the subject matter of the action, *the prevailing party* may be allowed a reasonable attorney's fee to be assessed by the court and collected as costs.

(Emphasis added.)

 Frank and Christy did not prevail on any of their arguments; the trial court dismissed their cross-claims for waste, bad faith, and breach of duty, and the court rejected their arguments regarding the interpretation of the trust instrument. In order to be eligible for attorney's fees, a litigant must be a "prevailing party." *Burnette v. Perkins & Associates*, 343 Ark. 237, 33 S.W.3d 145 (2000) (citing *Hewitt v. Helms*, 482 U.S. 755 (1987)). Because Frank and Christy were not prevailing parties, the trial court erred in awarding them fees, even in the conditional manner in which it did so here.

This case is therefore affirmed on direct appeal, and reversed on cross appeal.