

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV–15–236

| | |
|---|---|
| IN THE MATTER OF THE ESTATE OF FREDDIE E. HYDE, DECEASED | **Opinion Delivered** NOVEMBER 4, 2015 |
| MICHELLE TREAT, EXECUTRIX OF THE ESTATE OF FREDDIE E. HYDE, DECEASED<br>　　　APPELLANT/CROSS-APPELLEE | APPEAL FROM THE WHITE COUNTY CIRCUIT COURT [NO. PR-2014-66-1]<br><br>HONORABLE TOM HUGHES, JUDGE |
| V. | |
| JERRY HYDE<br>　　　APPELLEE/CROSS-APPELLANT | REVERSED ON DIRECT APPEAL; AFFIRMED ON CROSS-APPEAL |

**DAVID M. GLOVER, Judge**

This appeal and cross-appeal arise from an October 17, 2014 order entered by the White County Circuit Court in a pending probate case involving the estate of Freddie Hyde, who is deceased. Appellant Michelle Treat is the Executrix of his estate. The pertinent issues before the trial court were whether certain real property located in Pulaski County was properly part of Mr. Hyde's estate, and whether Mr. Hyde's change of beneficiary on his life-insurance policy to his son, Jason Scott Hyde, was effective, entitling Jason to the life insurance proceeds. The trial court concluded the real property was not part of the estate because the trustee's deed was null and void, thereby leaving the property in a family trust, but that Jason Hyde was entitled to his father's life-insurance proceeds as beneficiary of the policy. In her direct appeal, the executrix contends the trial court erred in ruling that the September 12, 2013 trustee's deed was null and void. On cross-appeal, Freddie's widow,

SLIP OPINION

Jerry, contends 1) the trial court erred in not finding the change of beneficiary on the life insurance policy violated the trial court's restraining order, and 2) the change of beneficiary violated Mr. Hyde's duties as trustee of the family trust. We reverse on direct appeal and affirm on cross-appeal.

Jerry and Freddie Hyde married in 1980. They both had children from other marriages, but no children were born of their marriage. On June 23, 2008, they executed the Hyde Family Revocable Trust. At the time, they deeded their marital home to the trust and placed other marital assets into the trust. The trust was subsequently amended to address concerns that are not pertinent to this appeal.

On August 19, 2013, Mrs. Hyde filed a complaint for separate maintenance in the Pulaski County Circuit Court. In contemplation of the divorce action, she transferred several hundred thousand dollars from joint bank accounts, including at least one account that was held in the trust, and put those funds in her personal name to the exclusion of Mr. Hyde. On August 21, 2013, the Pulaski County Circuit Court issued its standard restraining order. On September 12, 2013, Mr. Hyde executed and filed a trustee's deed purporting to convey to himself, as an individual, the marital home then held by the trust. On September 18, 2013, Mr. Hyde filed for divorce.

On February 23, 2014, Mr. Hyde died while the divorce action was pending. Mr. Hyde was living in White County at the time, and his will was admitted to probate in the White County Circuit Court. On March 14, 2014, as part of the probate proceedings, Mrs. Hyde filed her objection to the appointment of personal representative and several

2

motions for relief, asking the court, inter alia, to set aside the trustee's deed and to set aside the change-in-beneficiary designation on the New York Life insurance policy.

On July 16, 2014, a hearing was held on Mrs. Hyde's objections and requests for relief. At that hearing, the trial court heard testimony from the attorney who had drafted the trust documents and from Mrs. Hyde. Following the hearing, the trial court entered its order, portions of which are the subject of this appeal and cross-appeal.

As her sole point on direct appeal, the executrix contends that the trial court erred in concluding that the September 12, 2013 trustee's deed, conveying the marital home to Mr. Hyde, individually, was null and void. We agree.

The cardinal rule in construing a trust instrument is that the intention of the settlor must be ascertained. *Bailey v. Delta Trust & Bank*, 359 Ark. 424, 198 S.W.3d 506 (2004). In construing a trust, we apply the same rules applicable to the construction of wills. *Id.* The paramount principle in the interpretation of wills is that the intent of the testator (or the settlor, in the case of a trust) governs. *Id.* This intention is to be determined by viewing the four corners of the instrument, considering the language used, and giving meaning to all of its provisions, whenever possible. *Id.* This court will construe the words and sentences used in a will or trust in their ordinary sense in order to arrive at the testator's true intention. *Id.* In order to determine the intentions of the testator, consideration must be given to every part of the will. *Id.* Extrinsic evidence may be received on the issue of the testator's intent only if the terms of the will are ambiguous. *Id.* The determination of whether there is an ambiguity is a matter of law. *Id.* Absent a finding of ambiguity by the court, testimony about the

3

settlor's intent should not be considered. *Id*. Collateral evidence will be considered only when there is uncertainty about the testator's intentions from looking at the language of the instrument. *Thinn v. Parks*, 79 Ark. App. 20, 83 S.W.3d 430 (2002). Absent a finding of ambiguity by the court, a witness's testimony about his or her understanding of the settlor's intent, including the attorney who drafted the trust, should not be considered. *Id*.

In support of her position, the executrix cites Arkansas Code Annotated section 28-73-815(a)(1) and (a)(2), explaining that under that section, a trustee may exercise all powers conferred by the trust's terms over all trust property. She then relies upon pertinent portions of the trust in arguing that Mr. Hyde had the power under the terms of the trust to execute the trustee's deed and convey the marital home to himself.

*Trust Provisions*

The executrix relies upon the following trust provisions to support her argument:

1.04 <u>Grantor Ownership Interests</u>. *Unless noted otherwise on an attached schedule (to be denoted as Exhibit "A")* with the character ascribed thereto, the property comprising the original Trust and any other property subsequently transferred to the Trust will be treated as if each Grantor has an undivided one-half (½) interest therein. Any interest received by a Grantor that is disproportionate and received from the other Grantor will be considered a gift from one Grantor to the other. All trust income payable or principal amount distributable to either of them will have the same character as the property producing the income.

(Emphasis added.) Exhibit "A" to the trust—Grantor Ownership Interest Schedule—provides as follows:

The following property shall be deemed to be owned 100% by Grantor Freddie E. Hyde's Separate Share of the Hyde Family Revocable Trust, and upon the death of Freddie E. Hyde, provided Jerry L. Hyde survives Freddie E. Hyde ( . . . )

100% of said property shall be distributed in accordance with the terms and conditions of Section 2.05:

> 1.     Lot 8, Block 1, Chevaux Court, Phase 2, an Addition to the City of Little Rock, Pulaski County, Arkansas.

The introductory portion of Article II and section 2.01 of the trust provide that:

[t]he Trustee will hold, manage, invest and reinvest the assets of the Trust, collect the income thereof, and will dispose of the net income and principal pursuant to the terms and conditions as hereinafter set forth in this Article II.

> 2.01    Income and Principal Distributions.   During the lifetime of each Grantor, the Trustee shall pay to each Grantor his or her entire respective share of the annual net income of the Trust on demand.  In addition, during the joint lifetimes of the Grantors, each Grantor may at any time during his or her lifetime withdraw all or any part of the income and principal of his or her interest, free of trust, by delivering an instrument in writing duly signed by him or her to the Trustee describing the property or portion thereof desired to be withdrawn. Upon receipt of any such withdrawal request, the Trustee shall thereupon convey and deliver to the withdrawing Grantor, free of trust, the property described in the instrument.

The introductory portion of Article III and section 3.03 of the trust provides as follows:

> Except as otherwise provided below, the Trustee(s) will have the following powers with respect to the Trust and any trust created hereunder, to be exercised as the Trustee(s), in his/her/its sole discretion, and without approval of any court determines to be in the best interests of the beneficiaries:
>
> . . . .
>
> 3.03    To sell any property of the Trust for cash or on credit at public or private sale, to exchange any property of the Trust for other property, to grant options to purchase or acquire any property of the Trust and to determine the prices and terms of sales, exchanges and options.

Section 5.01 (amended in 2010) provides in pertinent part:

5.01    Trustees.  The Grantors, Freddie E. Hyde and Jerry L. Hyde, shall serve as the initial Trustees of this Revocable Trust.  While Freddie and Jerry are both able and willing, they shall serve jointly and severally and either shall have full authority for the Trust without the consent, notice, or joinder of the other, to act independently in performing transactions on behalf of the Trust.  This authority shall extend to all powers granted to the Trustees under the Trustees Powers hereof and shall include the right to contract for and in behalf of the Trust and to execute, negotiate, and compromise such instruments as may be necessary to carry out the purposes and intents of the Trust.

*The October 17, 2014 Order*

In the portion of the order dealing with the trustee's deed, the trial court summarized relevant paragraphs, reasoning as follows:

6.      Section 1.04 of the trust provided that, unless noted otherwise, property transferred to the Trust will be treated as if each Grantor had a one-half (½) interest therein.

7.      The Hyde Family Revocable Trust provided that Jerry L. Hyde and Freddie E. Hyde were collectively the Trustee of the Hyde Family Revocable Trust.

8.      Section 2.01 of the Trust provides that during the joint lifetime of the Grantors, each Grantor may at any time during his or her lifetime withdraw all or any part of the income and principal of his or her interest, free of Trust, by delivering an instrument in writing duly signed by him or her to the Trustee describing the property or portion thereof withdrawn.

9.      Section 2.01 of the Trust requires that upon receipt of any such withdrawal request, the Trustee shall thereupon convey and deliver to the withdrawing Grantor, free of Trust, the property described in the instrument.

10.     Freddie E. Hyde never delivered an instrument in writing duly signed by him to the Trustee describing the real estate referred to in paragraph 5 hereinabove nor any interest in said real property as property to be withdrawn from the Hyde Family Revocable Trust.

11.     The Trustee never conveyed any interest in the real property described in paragraph 5 hereinabove to Freddie E. Hyde.

SLIP OPINION

12.     The deed titled, Trustee's Deed, dated September 12, 2013, and recorded on September 12, 2013, was executed not by the Trustee, but only by Freddie E. Hyde. At the time Freddie E. Hyde executed the deed the real property was an asset of the Hyde Family Revocable Trust. The deed is null and void. The real estate is an asset of the Hyde Family Revocable Trust.

The executrix challenges the trial court's order by arguing that: 1) Section 5.01 contradicts the trial court's finding that Jerry and Freddie were collectively the Trustee; 2) Section 1.04 and Schedule A support the position that Jerry did not have only a one-half interest in the house; and 3) the trustee's deed constitutes the required written instrument described in Section 2.01 that was delivered from the grantor of the trust (Freddie) to the trustee (Freddie), requesting 100% withdrawal of the real estate in question. We conclude that many of her challenges are valid.

It is undisputed the trust was created for estate-planning purposes. However, while the trial court did not specifically determine that pertinent language within the trust was ambiguous, we can infer it did because the court allowed testimony both from the attorney who drafted the document and from Mrs. Hyde concerning the grantors' intent. Such extrinsic evidence should not be considered absent a finding of ambiguity. *Bailey*, *supra*. Regardless, our review of the four corners of the trust instrument convinces us that the trust is ambiguous concerning the Hydes' intent with respect to pertinent provisions. Furthermore, our review of the trust instrument and the extrinsic evidence presented to the trial court convinces us that the trial court erred in concluding that the trustee's deed was null and void.

SLIP OPINION

We begin with paragraph 6 of the October 17, 2014 order in which the trial court summarized section 1.04 as providing that property transferred to the trust was to be treated as if each grantor had a one–half (½) interest therein. Although paragraph 6 mentions "unless noted otherwise," the order never addresses Exhibit A to the trust. As we have previously set forth in the pertinent trust provisions, Exhibit A "noted otherwise." Specifically, Exhibit A provided the real property at issue here "shall be deemed to be owned 100% by Grantor Freddie E. Hyde's Separate Share of the Hyde Family Revocable Trust[.]"

Paragraph 7 of the trial court's order provides that Mr. and Mrs. Hyde were "collectively" the Trustee, i.e., they had to act in concert. There is language in the trust that definitely supports this finding. However, in examining the four corners of the trust instrument, we have also found language indicating the parties intended for each of them to be able to act separately and independently. For example, the introductory paragraph preceding section 3.03 of the trust contains language that the "Trustee(s)" will have powers to be exercised "as the Trustee(s), in his/her/its sole discretion." Section 3.03 provides that one of those powers is to "sell any property of the Trust for cash or on credit at public or private sale[.]" Similarly, section 5.01 is entitled "Trustees" and provides in part that, while able, Mr. and Mrs. Hyde

> shall serve jointly and severally and either shall have full authority for the Trust without the consent, notice, or joinder of the other, to act independently in performing transactions on behalf of the Trust. This authority shall extend to all powers granted to the Trustees under the Trustees Powers hereof and shall include the right to contract for and in behalf of the Trust and to execute, negotiate, and compromise such instruments as may be necessary to carry out the purposes and intents of the Trust.

As discussed previously, we conclude, at a minimum, that the trust language is ambiguous concerning the Hydes' intent in this regard. Because the language is ambiguous, we turn to the testimony presented by the drafting attorney and Mrs. Hyde. Mr. Hyde, of course, is deceased and was not available to testify.

The attorney testified he did not believe the intent of section 5.01 was to allow one trustee to remove the property from the trust. He considered section 5.01 as specifying "how a trustee or trustees are to act with primarily ministerial type decisions, whether it required both signatures, both trustees, or if it just required one signature." He candidly acknowledged on cross-examination that the trustee's powers are addressed in Section 3 of the trust, and that section 5.01 gives either party the ability to act on behalf of the trust with regard to the trustee's powers in Section 3; "[r]eading 3.03 by itself, I guess you could make the argument that a single trustee has the power to sell property by themselves since 3.03 says to sell any property of the trust for cash or on credit." He further explained he would "disagree that 5.01 deals with all of the powers of the trust, and [he] would not have just one trustee sign."

Mrs. Hyde's testimony is perhaps the most revealing regarding the Hydes' intent. She, too, candidly acknowledged that after she had filed her complaint for separate maintenance and "[i]n contemplation of the divorce action, [she] actually secured hundreds of thousands of dollars from bank accounts that were jointly owned by [her and her husband, including] one account that was in the name of the trust, and put them in [her] own personal name,"

taking them "to the exclusion of [her] husband." She clearly thought that the terms of the trust entitled her to do so.

Our review of the trust instrument and the extrinsic evidence presented to the trial court convinces us that, under section 5.01, Mr. Hyde, severally, had "full authority for the Trust without the consent, notice, or joinder of the other, to act independently in performing transactions on behalf of the Trust," including "the right to contract for and in behalf of the Trust and to execute, negotiate, and compromise such instruments as may be necessary to carry out the purposes and intents of the Trust"; that pursuant to section 3.03, he had the power to "sell any property of the Trust for cash or on credit at public or private sale . . . ."; and that pursuant to Exhibit A of the trust, he was deemed to own 100% of the property at issue here.

We also conclude section 2.01 of the trust does not provide an avenue to affirm the trial court because it provides that "each Grantor may at any time during his or her lifetime withdraw all or any part of the income and principal of his or her interest, free of trust, by delivering an instrument in writing duly signed by him or her to the Trustee describing the property or portion thereof desired to be withdrawn." This section of the trust does not provide a right of refusal. The trust language provides, "[u]pon receipt of any such withdrawal request, the Trustee shall thereupon convey and deliver to the withdrawing Grantor, free of trust, the property described in the instrument." Paragraphs 10, 11, and 12 of the October 17, 2014 order are based upon the trial court's determination that the Hydes had to act collectively as one trustee. Because we reach a different conclusion based on our

review of the trust instrument and the testimony, we find error in the trial court's conclusion that the trustee's deed executed by Mr. Hyde was null and void.

We reverse the trial court's conclusion in that regard, and conclude instead that the trustee's deed was valid and transferred the real property out of the trust and to Mr. Hyde, individually, making that property part of his estate. For the same reason, because we conclude that the trust instrument authorized Mr. Hyde to execute the trustee's deed in the manner that he did, we find no violation of his fiduciary duties under the trust. Furthermore, we agree with the executrix that a contempt proceeding would have been the appropriate action to take by Mrs. Hyde if she wanted to rely upon the restraining order in challenging Mr. Hyde's actions.

The cross-appeal by Mrs. Hyde challenges the trial court's ruling with respect to the life-insurance policy, contending 1) that the trial court erred in not finding the change of beneficiary to violate the trial court's restraining order, and 2) that the trial court erred in not finding the change of beneficiary violated Mr. Hyde's duties as trustee. We find no error.

The October 17, 2014 order provided in pertinent part:

13.    Freddie E. Hyde purchased New York Life Insurance Policy No. . . . on his life prior to June 23, 2008. He changed the policy beneficiary on June 28, 2008, to the Hyde Family Revocable Trust, Freddie E. Hyde and Jerry L. Hyde, Co-trustees, or successors. Ownership of this policy was never placed in the Hyde Family Revocable Trust. Ownership of the policy remained in Freddie E. Hyde at the time of his death.

14.    Freddie E. Hyde and Jerry L. Hyde remained husband and wife until the death of Freddie E. Hyde on February 23, 2014.

15.    Freddie E. Hyde, subsequent to June 23, 2008, designated his son, Jason Scott Hyde, as beneficiary of the New York Life Insurance policy.

16.     Jason Scott Hyde, as beneficiary of the New York Life Insurance Policy, is entitled to all policy proceeds of New York Life Insurance Policy No. . . . .

The pertinent portion of the restraining order provides that:

[e]ach party is hereby enjoined and restrained from selling, encumbering, mortgaging, contracting to sell, or otherwise disposing of, or removing from the jurisdiction of this Court, any of the property belonging to the parties, except in the ordinary course of business, or except by agreement of the parties, or except by the further Orders of the Court.

Ownership of the life insurance policy was never placed in the trust; instead, its ownership remained in Mr. Hyde at the time of his death, and he retained the power to change the beneficiary of the policy. There was no vested interest in the proceeds of the life insurance policy as long as Mr. Hyde was alive. *Dinwiddie v. Metropolitan Life Ins. Co.*, 204 Ark. 677, 163 S.W.2d 525 (1942). Consequently, as owner of the policy, he had the power to change the beneficiary, and, in doing so, he did not dispose of any property belonging "to the parties," he did not violate the terms of the restraining order, and he did not violate his fiduciary duties as trustee.

Reversed on direct appeal; affirmed on cross-appeal.

WHITEAKER and BROWN, JJ., agree.

*Rice & Adams*, by: *Brian K. Woodruff*, for appellant.

*Williams & Anderson PLC*, by: *Philip E. Kaplan*, for appellee.