Waymond M; Brown, Judge, dissenting; lanFor the following reasons, I respectfully dissent from the majority opinion. I. Facts On July 21, 1966, at the age of 21,- an unmarried Tom Alexander executed a valid Last Will and Testament stating the following, in pertinent part: ITEM II If I am not survived by a wife or by any children, I then give, devise and bequeath all of my property of every kind and character and wheresoever situated as follows: one-half to my brother, Frank Alexander, and one-half to my mother, Wanda Alexander, ITEM III If I am not survived by a wife or by any children, I then give, and if either of the beneficiaries mentioned in Item II above shoüld predecease me, • I then give, devise and bequeath all of my property of every kind and character and wheresoever situated to the survivor of said beneficiaries, ITEM ÍV If I am not survived by a wife or by any children, and if my mother and brother both predecease me.... After the allowance for Edna Brewer, I give, devise and bequeath the remainder of my property as follows: To Sparks Hospital to make necessary improvements or to purchase necessary equipment. Tom died on March 18, 2015, haying no wife, no children,'and being predeceased by both his mother and brother as well as Edna Brewer. An order probating Tom’s will and appointing M. Elise, .Alexander as the personal representative of the estate was entered on April 15, 2015. On August 27, 2015, Elise filed a Petition to Determine Heirship.[2] Noting J^that Frank passed leaving a spouse, Ellen Bales, she referenced the language in Item III regarding “survivors [sic] of said beneficiaries.”'[3] She went on' to note other language in the will that was “without any reference to the foregoing language regarding ‘the survivors [sic] of said beneficiaries,’ ” which established an annuity for the benefit of Tom’s former nanny and sought distribution of the balance of the estate to Sparks Hospital. She further advised that Sparks Hospital had become a part of Sparks Health System in 1999; that Sparks Health System[4] had .been purchased by Health Management Associates, Inc. (HMA), in 2009; and that HMA had been purchased by Community Health Systems Professional Services Corporation (Comihunity Health) in 2014.[5] Twenty potential heirs were' listed in the petition, including Community Health, Sparks Regional Medical Center (SRMC), and Sparks Health System.[6] John Holleman, a named heir and attorney,[7] responded to the petition on January 5. 2016, asserting that “all the gifts in [Tom’s] will fail” and “must be distributed through | aaintestacy.” Other heirs would subsequently enter appearances and join and adopt Holleman’s response. Fort Smith HMA, LLC d/b/a SRMC responded to the petition on January 15, 2016, asserting that “it should be permitted to honor Mr. Alexander in the manner he specifically requested, i,e. by benefitting the community with necessary improvements to the campus or the addition of new equipment” and asserted a claim for unpaid services rendered to Tom.[8] Separate appellant Evelyn House filed her response to the petition on January 25, 2015, asserting that Sparks Hospital “no longer exists,” having been bought by SRMC, and that cy pres does not apply because “[a] plain reading of the whole instrument does not show that * * * had a solely or purely charitable purpose * * * when he created his * * *” and that, in any event, Fort Smith HMA, LLC, is not a charitable entity that cy pres can apply to. SRMC responded to the petition on January 26, 2016, stating that Sparks Memorial Hospital was an Arkansas nonprofit association at the time Tom executed his will in 1966; that Sparks Memorial Hospital became SRMC, an Arkansas nonprofit association, on June 2,1970; and that SRMC became an Arkansas nonprofit corporation on June 27, 2002. On December 1, 2009, SRMC sold “substantially all of its tangible assets”; however, SRMC asserted that it “is still in existence and that the purpose of the entity remains the same, namely to promote healthcare in the Fort Smith Region.” Accordingly, SRMC argued that “the fact that [SRMC] no longer owns the hospital does not necessarily mean the bequest | ^lapses” and asserted that the cy pres doctrine should allow SRMC to be determined to be the beneficiary of Tom’s will. Holleman replied to SRMC’s response on January 23, 2016, stating that Tom did not intend to devise his estate to an entity that does not operate a hospital, thereby asserting that while SRMC may exist, it “no longer bears any resemblance to the ‘Sparks Hospital’ ” mentioned in Tom’s will where the hospital iS not run by SRMC but a for-profit entity. Holleman also noted that SRMC’s assets that were excluded from sale were used to create the Degen Foundation, which is a nonprofit corporation whose purpose is to build and operate a new medical school in cooperation with the Arkansas Colleges of Health Education, and that it is the Degen Foundation that is performing SRMC’s asserted purpose, not SRMC. Additionally, Holleman reasserted House’s argument that cy pres does not apply because the sole purpose of Tom’s will was not a charitable purpose, but “only intended to be a last resort in the event his other devises failed.” Alternatively, he argued that if cy pres could apply, an award to SRMC would not accomplish Tom’s intent. A hearing on the matter was held on April 5, 2016. In pertinent part, not already covered above, Thomas Webb, executive director of SRMC, testified that SRMC no longer owns the hospital, no longer has a license to operate a hospital, “does not intend to operate a hospital,” and no longer provides “any medical care directly to patients.” Webb testified that SRMC’s function was “to continue its mission of providing healtheare and healthcare education for the surrounding area of Western Arkansas and Eastern Oklahoma” and that it did so “with money.” This was despite his testimony that the name SRMC “is only used to handle business matters, financial unwinding type of information” and that the |M“bulk of the $41 million-plus” gained from the sale of the hospital’s assets was “gifted in a restricted manner to the Degen Foundation for the development of an osteopathic medical school”; Webb is the executive director of the Degen Foundation as well. Because of its gift to the Degen Foundation and the purpose of that gift, he testified that he thought SRMC is a hospital. He provided options for which Tom’s bequest could be used, including the college’s building itself at a price in the “$1 million range”; to purchase medical equipment— none of which would be used on actual patients — at a cost of $1,168,000;[9] a digital audio-visual system with “two of only three laser type projectors that exist in Arkansas” at a cost of $1,066,000; and the construction of a “fully-functioning” clinic across the street from the school at a cost of $4.1 billion. Webb further admitted SRMC would not own any part of the college and does not intend to own any part, of it, the school would not have a hospital license, and the building would be owned by the Degen Foundation. The clinic would be managed by Mercy, operating under its Medicare and Medicaid provider numbers with Mercy branding and a reference to the Arkansas College of Health Education, and was “owned by us”; “us” was not defined.[10] He denied that Tom’s will gave a charitable gift and opined that “the citizens |%that use the facilities on an ongoing basis would benefit from having a hospital with improvements and necessary equipment to run it.” John Wommack, testified that Tom’s estate would have to pay estate taxes of about $850,000 to $400,000, if the gift went to anyone who was not a charitable 501(c)(3) organization, though the gift would be a “100 percent estate tax charitable deduction” if the bequest was entirely to a charity with that status. David Roth-enberger testified that he is an employee of “Sparks Health System, which is ultimately owned by Fort Smith HMA, LLC,” which is an “owned subsidiary of Community Health Systems,” all of which are for-profit companies. He is the market chief officer for Fort Smith HMA, LLC. He testified to doing the “due diligence” for the sale which was for the purchase of the “entire tangible and intangible assets of Sparks Health System,” which included “substantially all the assets” of SRMC, which were transferred to Fort Smith HMA, LLC on December 1, 2009. At 12:01 a.m., while continuing to use the SRMC name, Fort- Smith HMA, LLC, took over operations, having hired all the employees and medical staff as part of the agreement, implemented their patient-registration system, using the same Medicare and Medicaid provider numbers from prior to the sale, and providing hospital services “comparable to” and “not substantially changed” from the services SRMC provided.[11] Rothenberger testified that Fort Smith HMA, LLC, would recognize Tom with “some kind of memorial whether |2flit be a plaque, if we could do that, if it’s a particular wing of the hospital or if it’s something” along that line, “whatever would fit the need.” He believed that Fort Smith HMA, LLC, should receive the funds “because the will specifically mentions Sparks Hospital” and Fort Smith HMA, LLC, “[has] continued to operate Sparks Hospital.” He went on to testify that the sale of assets from SRMC to Fort Smith HMA LLC, was “not a merger” and “not a continuation of the same entity that was operating Sparks Hospital in 1966,” but was an “asset purchase.” Following the hearing, post-trial briefs were filed by Tom’s heirs and SRMC filed its proposed findings of fact and conclusions of law. The circuit court entered its order with findings of fact and conclusions of law on June 15, 2016, in which it found the matter to be a case of first impression in the State of Arkansas. Furthermore, it stated the following: 31. This Court cannot ignore the realities of the development of medical care. Medical procedures that were formerly conducted only in hospitals are now performed in clinical settings. This fact is critical' here because the Testator sought to support care administered in hospitals rather than the physical structure itself, SRMC, through the clinic, will ■ provide a variety of hospitaUike operations. Furthermore, the Court cannot ignore the fact that providers, such as, doctors, are necessary to provide healthcare to the community and allow healthcare institutions, such as clinics and hospitals to function. SRMC’s overall mission is essentially to improve the health status of the residents of the community’s health and well-being. SRMC is continuing it’s [sic] charitable purpose by educating and training doctors, conducting medical research, and providing patient care at the medical clinic in Fort Smith. 32. The Court finds that SRMC, although operating under different articles of incorporation and in a different name, currently exists as a legally viable non-profit corporation that continues to function and is capable of carrying out the intent and purpose of the Testator’s memorial gift, and is therefore, entitled to the Testator’s residuary estate. 33.Furthermore, this holding is sustainable for a second reason. Even if the Court were to find that the Testator intended Sparks Hospital, the non-profit hospital, not the non-profit entity, to be the beneficiary of his residuary estate, the | j)7non-profit hospital no longer exists. Sparks Hospital, the hospital, is being operated as a for-profit hospital. As such, this Court may look to the doctrine of cy pres. [[Image here]] 36. Before the cy pres doctrine can be applied, however, a court must find that the testator intended for a devise to have a charitable purpose. For a devise to have a charitable purpose, the devise must achieve some public benefit, such as promotion of health. 36. This Court finds that the Testator’s bequest was to a charitable organization and for a charitable purpose. At the time the Testator executed his Will, “Sparks Hospital” was a charitable institution and organization. If fact, it remained a charitable institution and organization until December of 2009. Although it has recently been held that the fact that a devise is left to a charitable institution alone does not designate a devise as a charitable devise (Presbytery, 2016 Ark. 138, 489 S.W.3d 153 (2016)), the Testator’s devise was to a charitable institution and organization and contained a charitable purpose. Particularly, the Testator expressly stated in his Will that the residuary of his estate was to be used by Sparks Hospital for the purposes of purchasing necessary equipment and making necessary improvements. The Decedent expressly restricted the bequest to maintaining and updating the community non-profit hospital. The devise is devoted to the accomplishment of the promotion of health, á purpose beneficial to the community and of substantial public interest. 37. Furthermore, Mr. Wommack testified that if the Testator’s residuary estate were received by anyone other than a charitable organization, the estate would have to pay estate taxes estimated to be around $400,000. However,' if someone who is a charitable organization received the Testator’s residuary estate, the estate will not have to pay any estate taxes; the estate will receive an estate charitable contribution deduction. Additionally, Mr. Rothenberger testified that if [Fort Smith HMA, LLC] were to receive the Testator’s residuary estate, the estate would incur a corporate income tax in addition to the estate tax. 38. Since Sparks Hospital, the nonprofit hospital, no longer exists, the Court finds that it is impossible to carry out the Testator’s stated charitable purpose. As such, the Court may utilize cy pres to reform the will, '39. -For the reasons set forth'in paragraphs 23-31 or this Order,' the Court finds that SRMC, is the appropriate cy pres beneficiary of the Testator’s bequest. This timely appeal followed. II. Standard of Review |gaWe review probate matters de novo but will not reverse the circuit court’s findings of fact unless they are clearly erroneous.[12] A finding is clearly erroneous when, although there is evidence to support it, the appellate court is left on the entire evidence with the firm conviction that a mistake has been committed.[13] We- must also defer to the superior position of the lower court sitting in a probate matter to weigh the credibility of the witnesses.[14] The appellants’ first argument on appeal is that the circuit court erred by finding that Tom Alexander intended to. give his estate to a specific legal entity and; its corporate successors. They specifically argue that all Tom’s intended gifts lapsed, specifically the gift to Sparks Hospital, which no longer exists and that the circuit court erred in finding that Tom’s gift was to the entity behind the hospital and that he was “uninterested in the physical structure itself.” Finally, they argue that the circuit court erred in finding that the functions of SRMC remained the same through its transition from Sparks Hospital and by conflating SRMC with the Arkansas Colleges of Health Education. ‘ This court’s primary objective when construing the language in a will or trust is to ascertain and effectuate the intent of the testator or settlor as long as that intent is not |29contrary to the law,[15] Where the language of a will expressly states the testator’s - intention, the ■ intent must be gathered from the four corners of the instrument.[16] It is only proper to invoke the rules of construction when the language is ambiguous.[17] In order to determine the intention's of the testator, consideration must be given to every part of the testamentary instrument.[18] Extrinsic evidence may be received on the issue of the testator’s intent if the terms of the will or trust are ambiguous.[19] Looking for the intent of the testator, Tom, the will expressly states, “If I am not survived by a wife or by any children, and if my mother and brother both predecease me.... After the allowance for Edna Brewer, I give, devise and bequeath the remainder of my property as follows: To Sparks Hospital to make necessary improvements or to purchase necessary equipment.” He was predeceased by every named person in the will, leaving only the bequest to Sparks Hospital. A clear reading of the will first shows that Tom intended a charitable gift to “Sparks Hospital” for the benefit of improving Sparks Hospital. However, Sparks Hospital, the nonprofit, no longer exists as Tom knew it, having become SRMC, a for-profit. In order to move any further, this court must determine if Tom’s bequest was a Isncharitable trust because all the appellants’ arguments are moot if Tom’s will did not create a charitable trust. A trust may be created by transfer of property to another person as trustee during the settlor’s lifetime or by will or other disposition taking effect upon the settlor’s death.[20] When a charitable trust is created, legal title is passed to the trustee to hold it for the benefit of a charitable purpose.[21] This court has stated that in creating a charitable trust, the settlor must describe a purpose of substantial public interest.[22] Arkansas Code Annotated section 28-73-305 lists specific charitable purposes: (a) A charitable trust may be created for the relief of poverty, the advancement of education or religion, the promotion of health, governmental or municipal purposes, or other purposes the achievement of which is beneficial to the community. (b) If the terms of a charitable trust do not indicate a particular charitable purpose or beneficiary, the court may select one (1) or more charitable purposes or beneficiaries. The selection must be consistent with the settlor’s intention to the extent it can be ascertained.[23] | si It is elementary that charitable trusts will not be permitted to fail if the intention of the creator of such trusts can be carried out, and effect be given thereto.[24] The record is clear that Tom did not create a trust of any sort, let alone charitable, as his gift was to be given directly to Sparks Hospital for it to use in accordance with his direction. The cy pres doctrine is inapplicable to a will that does not create a charitable trust.[25] In addressing the appellants’ second point, appellee cites Lowery for the following statement: The bulk of the cases applying cy pres involve charitable trusts, rather than bequests, as here, and there is some authority that the doctrine is limited to charitable trusts. But the growing weight of authority, and better reasoned, is that the doctrine of cy pres is equally applicable to charitable bequests and devises. We can see no reason why the logic of cy pres, which was conceived as a method of achieving the ultimate aim of the donor “as nearly as possible” where his expressed intent for some reason became unattainable, is not equally sound where the bequest is outright rather than in trust, and this view is consistent with some of the dicta of our own decisions.[26] However, it is clear that this language is dicta and not binding as our supreme court affirmed the circuit court based where it held that: [The] elementary rule of construction that a bequest or devise will not fail because of a mere inaccuracy in the designation of the beneficiary, where the meaning of the testator can be gathered with reasonable certainty from the instrument itself, or where the identity of the object of his bounty can be shown by extrinsic evidence and such | ^evidence is always admissible for the purpose of identifying the beneficiary, where there is uncertainty or ambiguity in the designation.[27] Under these facts, (1) Tom did gift to the entity of Sparks Hospital and likely its successors, but for the benefit of that hospital, i.e., that building; (2) like his other attempted gifts, his gift to Sparks Hospital lapsed so the circuit court erred in failing to find so; (3) the circuit court erred in finding that the functions of SRMC remained the same through its transition from Sparks Hospital; and (4) the circuit court erred by conflating SRMC not only with the Arkansas Colleges of Health Education, but also with the Degen Foundation. Accordingly, I would reverse and give the money to appellants. Items 2, 3, and 4 are addressed below in my discussion of Sparks Hospital. III. Sparks Hospital The evidence before the circuit court was that Sparks Hospital had become SRMC. However, SRMC sold substantially all its assets, including its goodwill and the use of its name to Fort Smith HMA, LLC. Webb testified that SRMC was allowed use of the name SRMC “only to handle business matters, financial unwinding type information.” Rothenberger’s testimony made it clear that SRMC had no connection to the hospital after Fort Smith HMA, LLC, purchased it and that Fort Smith HMA, LLC, was in complete control of the hospital. As the existing entity after the sale of its assets, goodwill, and name, SRMC does business as Fort Smith Regional Healthcare Foundation. Webb testified that SRMC’s resolution states that its distributed funds “shall be used only for the purposes of [¡^establishing an institution of health education and various activities relating to” and admits that Tom’s will does not state any designation of funds for health education. But even if the will designated health education as a purpose for the bequest, the resolution explicitly states that the restricted purpose of SRMC’s gift was communicated to the Degen Foundation. This is because the Degen Foundation will actually be doing the work to start the school and not SRMC. Throughout his testimony, Webb speaks of “we” with regard to the actions being taken to open the osteopathic medical school and clinic. However, he clearly stated that SRMC d/b/a Fort Smith Regional Healthcare Foundation was not operating as a hospital; cannot operate a hospital; was managing accounts receivable accrued prior to the December 2009 sale, from which money was “still trickling in”; and gifted the “bulk of the $41 million-plus” gained from the sale of the hospital’s assets “in a restricted manner to the Degen Foundation for the development of an osteopathic medical school,” It appears that the “we” of which Webb is speaking is actually the Degen Foundation, which he is also the executive director of. Webb’s testimony conflates the actions and intended actions of two completely separate entities. The circuit court, apparently did so as well and did so in error. Webb’s testimony and other evidence from below, without regard to whether SRMC ever intends to dissolve, shows that SRMC — and therefore Sparks Hospital— no longer existed as an entity anywhere near similar to the entity that Tom made his bequest.[28] Furthermore, all the work that SRMC speaks of that it could use Tom’s bequest for is being |a4done and shall be maintained by entities other than itself. SRMC will own no stake in the intended medical school nor the intended clinic across the street and will have no hand in the creation or running of either as that will be handled by a combination of the Degen Foundation, the Arkansas Colleges of Health Education, and Mercy Hospital, Regardless of Webb’s testimony that SRMC’s function is to “continue its mission of providing healthcare, and health education for the surrounding area of Western Arkansas and Eastern Oklahoma” by using money, the fact remains that, the entity itself, is no longer in the “hospital business”;[29] and therefore, was in no position “to make necessary improvements or to purchase necessary equipment” as Tom directed his bequest to be used for. Furthermore, Webb testified that if SRMC received the bequest, its board of directors would decide what to do with the money, a decision which could be contrary to Tom’s intent. Accordingly, I would affirm on this point. Because I think we should reverse on the appellants’ first point, I would not address the appellants’ second argument that the circuit court-erred in finding that the cy pres’doctrine applies in the matter. However, alternatively, if a charitable trust was created and/or the cy pres doctrine can apply to charitable bequests, I would remand and order the circuit court to give the money to a similarly situated nonprofit as was Sparks Hospital, noting' that |RRthe Degen Foundation or even the Sparks Healthcare Foundation — “the philanthropic arm of the hospital that raised funds that supported the hospital” according to Webb — may be an option if either is a nonprofit. I agree with the circuit court that the bequest cannot be given to Fort Smith HMA, LLC, because it would result in a large taxable event to the estate, which was clearly not Tom’s intent háving made his bequest to a non-profit hospital. In Bosson v. Woman’s Christian National Library Association, our supreme court stated that: The meaning of the doctrine of cy pres is that when a definite function or duty is to be performed, and it cannot be done in exact conformity with the scheme of the person • or persons who have provided for it, it must be performed with as close approximation to that scheme as reasonably practicable; and so, of course, it must be enforced, and the reason or basis for the doctrine is to permit the main purpose of the donor of a charitable trust to be carried out as nearly as possible where it cannot be'done to the letter.[30] Giving Tom’s gift to SRMC is not a performance of Tom’s will as it is not “as close approximation to that scheme as reasonably praeticable[.]” Therefore, I respectfully dissent. . An August 25, 2015 inventory of the estate estimated the value of real estate to be $5,661,104. . The will references a survivor and not "survivors.” . The secretary of state showed the" corporation of Sparks Health System to have a fictitious name of Fort Smith Regional Healthcare Foundation. . In its March 4, 2016 response to the requests for admissions from James Brooks and Robert Brooks, SRMC admitted that Community Health purchased by Fort Smith HMA, LLC in 2013; however, Fort Smith HMA, LLC denied the same in its February 29, 2016 response to the requests for admissions from James Brooks and Robert Brooks. . Regions' Bank (Regions) was substituted for M. Elisé1 Alexander as the estate’s personal representative oij. December 1,2015. . He was joined by two' other attorneys. . The secretary of state and the State of Arkansas’s Department of Health both showed the corporation of SRMC to also have a fictitious name of Fort Smith Regional Healthcare Foundation. . The equipment would include a model lab and a simulation lab. . The lack of definition is confusing because of Webb's positions as executive director of both SRMC and the Degen Foundation. It may be presumed he meant SRMC, but this seems unlikely given that $41 million of the $40-$50 million SRMC acquired during the sale was gifted to the Degen Foundation. .Fort Smith HMA, LLC ceased providing a couple of services and added a few services in addition to renovating ten emergency rooms and adding ten operating rooms. . Patton v. Fulmer, 2016 Ark. App. 260, at 7, 492 S.W.3d 512, 516 (citing In re Estate of Kemp, 2014 Ark. App. 160, 433 S.W.3d 911). . Id. . Id. . Covenant Presbytery v. First Baptist Church, 2016, Ark. 138, at 4, 489 S.W.3d 153, 156 (citing Bailey v. Delta Tr. & Bank, 359 Ark. 424, 198 S.W.3d 506 (2004)). . Id. . Id. . Id. . Id. (citing Burnett v. First Commercial Tr. Co., 327 Ark. 430, 939 S.W.2d 827 (1997)). . Ark. Code Ann. § 28-73-401(1) (Repl. 2012). . Stone v. Washington Reg’l Med. Ctr., 2017 Ark. 90, at 9, 515 S.W.3d 104, 110 (citing Covenant Presbytery, 2016 Ark. 138, 489 S.W.3d 153). . Id. (citing Kohn v. Pearson, 282 Ark. 418, 670 S.W.2d 795 (1984)). . Ark. Code Ann. § 28-73-305(a) & (b) (Repl. 2012). . State ex rel. Att’y. Gen. v. Van Buren Sch. Dist. No. 42, 191 Ark. 1096, 89 S.W.2d 605, 609 (1936) (citing Schell v. Leander Clark College, 10 F.2d 542, 555 (1926)). . Covenant Presbytery, 2016 Ark. 138, at 6, 489 S.W.3d at 157 (citing Ark. Code Ann. § 28-73-413(a)). . Lowery v. Jones, 272 Ark. 55, 58-59, 611 S.W.2d 759, 761 (1981) (internal citations omitted). . Id. at 59, 611 S.W.2d at 760. . Webb testified that all SRMC had was its cash and its accounts receivable, . "Hospital business” was defined in the agreement as "the Hospital and other healthcare facilities and business (including clinics and outpatient operations) owned and operat-eel by Seller, including all real property, whether developed, or undeveloped, associated with any of the foregoing and all business, structures, fixtures and other improvements thereof [.] . 216 Ark. 334, 338-39, 225, S.W.2d 336, 338 (1949).